**ISBILL ASSOCIATES, INC.,**
**Plaintiff-Appellee,**

v.

**CITY AND COUNTY OF DENVER,**
**Defendant-Appellant.**

**No. 79CA1169.**

Colorado Court of Appeals,
Division 1.

April 14, 1983.

Rehearing Denied May 12, 1983.

Wood, Ris & Hames, P.C., Bruce F. Fest, Denver, for plaintiff-appellee.

Wayne L. Johnson, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant, City and County of Denver, appeals a judgment entered on a jury verdict awarding $64,318.32 to Isbill Associates, Inc., for water damage to technical drawings which were stored in an area leased from Denver. We affirm.

Isbill is an airport engineering consulting firm which leases office space from Denver at Stapleton International Airport. On November 12, 1975, a Denver employee connected a steam coil to condensate lines located in the basement of the airport terminal. Although the employee attempted to trace the lines to determine if they were functional, no "as built" drawings were available, nor was hand-tracing feasible.

On November 17 and 22, 1975, water escaped from uncapped pipes in the ceiling of Isbill's offices. Approximately 1,800 engineering drawings, aerial photographs, maps, and other technical documents were damaged or destroyed. The damaged documents were moved to a different area, and over 3,700 hours of staff time were expended for restoration or recreation of the documents. The uncapped pipes were subsequently repaired.

On December 9, Isbill's insurer sent notice to the mayor of its claim for damages against Denver. That notice stated, in part:

"CLAIM FOR DAMAGES: ISBILL ASSOCIATES, INC. MAIN TERMINAL BUILDING STAPLETON INTERNATIONAL AIRPORT, WATER DAMAGE DATE OF LOSS: NOVEMBER 12–18, 1975

OUR FILE # 236032

At this time we are attempting to determine the full amount of the damage, and

indications are at this time that it would be as great as $100,000.

This is to advise you that as the insurer of the property of Isbill Associates, Inc., we would be subrogated to their [sic] right of recovery in the event payment is made and that also to advise you that there is the possibility of the loss exceeding the insured amount, therefore a separate claim of Isbill Associates would be presented."

Isbill later recovered $50,000 from this insurer.

Isbill sued Denver for negligence and breach of the implied covenant of quiet enjoyment to recover the costs of restoring and replacing its drawings. At trial, Denver objected to the introduction of evidence concerning the second flooding incident because the date was not specifically pleaded. However, the trial court found that both floodings were within the scope of the pleadings, and allowed Isbill to introduce evidence concerning both incidents.

Before instruction of the jury, Denver objected to the use of a general verdict form. Denver's counsel requested a special verdict form which would require the jury to state whether, if it found for Isbill, that verdict was based on a breach of the covenant of quiet enjoyment or negligence, or both. Denver's request was denied. The jury awarded Isbill $64,318.32. The judgment awarded interest at the statutory rate from the date of the second flooding incident until the date of the jury verdict.

## I.

Denver first contends that it was not given proper notice of Isbill's claim. We disagree.

Section 24–10–109(1), C.R.S.1973 (1982 Repl.Vol. 10), states:

"Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury. Substantial compliance with the notice provisions of this

section shall be a condition precedent to any action brought under the provisions of this article, and failure of substantial compliance shall be a complete defense to any such action."

■ Denver contends that because this statute requires notice by the person claiming the injury, notice by Isbill's insurer was insufficient. Under the facts of this case, Denver's argument is not persuasive. This is especially so because the statute itself only requires "substantial compliance." We agree with the trial court's reasoning in finding proper notice:

"The court notes that while the notice has been given by the Fireman's Fund [Isbill's insurer], that the name and address of the named Plaintiff are set forth in the notice and that the City and County of Denver has been clearly put on notice as to possible claims covered by insurance and other claims which arise in excess of the insured amount .... The court determines that having set forth a requirement of substantial compliance, that this court [has] a duty not to elevate form over substance ...."

■ Denver also claims that the notice should have been sent to the Denver City Council or its attorney, and that notice to the mayor was insufficient. Denver bases this argument on § 24–10–109(3), C.R.S. 1973 (1982 Repl.Vol. 10), which provides:

"If the claim is against the state or an employee thereof, the notice shall be presented to the attorney general. If the claim is against any other public entity or an employee thereof, the notice shall be presented to the *governing body of the public entity or the attorney representing the public entity.*" (emphasis supplied)

Denver argues that "governing body" could only refer to the legislative branch, or the Denver City Council. Even if we accepted this line of reasoning, we hold that Denver is estopped from insisting on notice to the City Council for property damage cases.

*Denver Revised Municipal Code* 191.1 provides:

"Before the City and County of Denver shall be liable for property damages to any person, the person so damaged, or someone on his behalf, shall within sixty (60) days after incurring of such damages *give the Mayor notice in writing* of such damages, stating fully, in such notice when, where, and how the damages occurred and the extent thereof. Notice of claim for personal injuries shall be given as provided by the Charter and the general laws."

Even if § 24–10–109(3) required notice to the City Council as the "governing body," public entities may be equitably estopped from setting up this section as a bar to actions against it. *Gray v. Regional Transportation District,* 43 Colo.App. 107, 602 P.2d 879 (1979). In view of the provisions of the municipal code, an estoppel is created.

## II.

■ Denver also argues that the trial court erred when it received evidence of the second flooding incident over Denver's objection. Even if this were error, it does not merit reversal here.

The complaint alleged as follows:

"*On or about* November 17, 1975, water leaked through the ceiling into the said office space thereby materially damaging numerous technical drawings of the Plaintiff." (emphasis supplied)

The trial court found that this language encompassed both flooding incidents. The two incidents were only 5 days apart and caused the same type of damage, although the second incident was minor in comparison with the first. Thus, Denver was not prejudiced in its defense by the introduction of such evidence. *See* C.R.C.P. 15(b). Moreover, Denver could not have been surprised by such evidence. The second flooding incident was extensively explored by Denver during pre-trial discovery.

## III.

Denver next contends that Isbill failed to establish the elements of a breach of the covenant of quiet enjoyment, and that the trial court erred in sending this issue to the jury. We disagree.

■ The covenant of quiet enjoyment is breached by:

" 'any disturbance of a lessee's possession *by his lessor* which renders the premises unfit for occupancy for the purposes for which they were leased, *or* which deprives the lessee of the beneficial enjoyment of the premises, causing him to abandon them.' " (former emphasis in original, latter emphasis supplied)

*Western Stock Center, Inc. v. Sevit, Inc.,* 195 Colo. 372, 578 P.2d 1045 (1978), *quoting Radinsky v. Weaver,* 170 Colo. 169, 460 P.2d 218 (1969).

Denver claims that *Western Stock Center* requires abandonment of the leased premises, and that Isbill did not abandon. We find Denver's construction of *Western Stock Center* to be in error.

■ The *Western Stock Center* test is stated in the disjunctive. It requires either a disturbance which renders the premises unfit for the purpose for which they were leased *or* a disturbance which deprives the lessee of the beneficial enjoyment of the premises, causing abandonment. Thus, a showing of abandonment is not required in all cases. This holding has support in a number of other jurisdictions which have held that abandonment is not a required element of the breach of the covenant of quiet enjoyment. *See, e.g., D.M. Development Co. v. Osburn,* 51 Or.App. 207, 625 P.2d 157 (1981); *Nate v. Galloway,* 408 N.E.2d 1317 (Ind.App.1980); *Northern Terminals, Inc. v. Smith Grocery & Variety, Inc.,* 138 Vt. 389, 418 A.2d 22 (1980); *64 East Walton, Inc. v. Chicago Title & Trust Co.,* 69 Ill.App.3d 635, 25 Ill.Dec. 875, 387 N.E.2d 751 (1979).

■ To satisfy the first *Western Stock Center* test, one need not show abandonment; rather, one need prove only a "disturbance of ... possession ... which renders the premises unfit for the purpose for which they were leased." Proof of flooding in an area where technical drawings are

stored presents, at the least, a jury question of whether the covenant of quiet enjoyment has been breached.

## IV.

■ Denver also argues that the trial court erred by permitting Isbill to assert the claims of its insurer and that the amount of judgment should be reduced by the $50,000 Isbill received from its insurer. We hold that the collateral source doctrine is applicable and that, under that doctrine, Isbill's damages should not be reduced because Isbill was partially compensated for its loss by insurance. *Powell v. Brady,* 30 Colo.App. 406, 496 P.2d 328 (1972).

Denver cites *Gomez v. Black,* 32 Colo. App. 332, 511 P.2d 531 (1973) for the proposition that insurance claims may only be asserted in one of three ways: (1) by joining in the action, (2) by assignment, or (3) by a separate action. *Gomez* held that if a Medicaid claim is not presented in one of the above ways, the plaintiff's judgment must be reduced by the amount recovered from Medicaid. However, *Gomez* is inapposite because its result depended on the rule that the collateral source doctrine does not apply to gratuitous benefits received from a *government* source. Isbill was insured by a private company; thus, the collateral source rule applies.

## V.

■ Denver last argues that the trial court erred by awarding prejudgment interest. We disagree.

"The right to interest, independent of an agreement to pay it, is statutory." *Weaver v. First National Bank,* 138 Colo. 83, 330 P.2d 142 (1958). Because the parties here did not agree to liquidated damages, we must look to the statutes to determine the propriety of an award of prejudgment interest.

The awarding of interest in this case is governed by § 5–12–102, C.R.S.1973 (1982 Cum.Supp.), which reads, in part:

"Except as provided in section 13–21–101, C.R.S.1973, when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

. . . .

(3) Interest shall be allowed as provided in subsection (1) of this section even if the amount is unliquidated at the time of wrongful withholding or at the time when due."

A strict reading of this statute might lead to the conclusion that prejudgment interest may not be awarded in a property damage case because the statute specifies that unliquidated claims qualify for prejudgment interest only when "money or property has been wrongfully withheld." *See Jasken v. Sheehy Construction Co.,* 642 P.2d 58 (Colo.App.1982); *Great Western Sugar Co. v. Northern Natural Gas Co.,* 661 P.2d 684 (Colo.App.1982) *cert. granted* (Colo. No. 82SC322, March 21, 1983). However, because the statute is unclear with regard to a claim for property damage, it is necessary to resort to extrinsic aids to construction. *See Stewart v. Public Employees' Retirement Ass'n,* 43 Colo.App. 25, 612 P.2d 1141 (1979). A review of the legislative history of § 5–12–102 makes it clear that a strict reading of this section is inappropriate.

A senator who was a joint sponsor of the bill which repealed and reenacted § 5–12–102 in its present form explained, during hearings on the bill, the previous Colorado law on prejudgment interest, the changes in the statute, and its precise implications.

He explained that the new section was "an attempt to clear up the mistakes of the past." Specifically, he noted that:

"All plaintiffs, or defendants who counterclaim, for that matter, are entitled to interest from the time the action accrued, not from the time the suit was filed, not from the time judgment was entered, but from the time they were wronged .... The present state of the law encourages the wrongdoer to stall because in some cases they have the money until judgment or settlement."

Senate hearings on S. 463 (March 12, 1979).

The legislative history clearly indicates that all cases are to be treated equally regarding the time interest begins to accrue.[1] Thus, we affirm the trial court's award of prejudgment interest accruing from the week of the flooding incidents.

Judgment affirmed.

STERNBERG and COYTE [*], JJ., concur.

---

[1] The statute which governs personal injury actions was also amended, effective July 1, 1979, to allow prejudgment interest from the date the action accrued. Section 13–21–101, C.R.S.1973 (1982 Cum.Supp.).

[*] Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S.1973 (1982 Cum.Supp.).