Judson F. LLOYD, M.D.,
Plaintiff-Appellant,

v.

STATE PERSONNEL BOARD OF the STATE OF COLORADO and the Members thereof, to wit: Randall C. Mustain-Wood, Tucker K. Trautman, Lincoln L. Baca, Raymond C. Delisle, Jan Knoop and M. Eileen Perichetti, Secretary-Administrator, Thomas R. Moeller and Edward A. Turrou, Hearing Officers appointed by State Personnel Board of the State of Colorado, Department of Institutions, a State Agency, Frank Traylor, its Director, Division of Mental Health, a State Agency, Robert Glover, Ph.D., its present Director, Fort Logan Mental Health Center, Joe Alexander, M.D., its Director, Defendants-Appellees.

No. 84CA0442.

Colorado Court of Appeals,
Div. III.

Aug. 1, 1985.

As Modified on Denial of Rehearing
Sept. 12, 1985.

Certiorari Granted Dec. 16, 1985.

Green & Josefiak P.C., Mary M. Josefiak, Philip Burton Green, Denver, for plaintiff-appellant.

Wood, Ris & Hames, P.C., Joel N. Varnell, F. Michael Ludwig, Denver, Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., M. Tracy James, Asst. Atty. Gen., Denver, for defendants-appellees.

METZGER, Judge.

Plaintiff, Judson F. Lloyd, M.D., appeals the summary judgment entered in favor of defendants, State Personnel Board of the State of Colorado (Board) and its members, which held that he had failed to comply with the notice provisions of the Governmental Immunity Act (the Act). We affirm in part and reverse in part.

Lloyd alleged the following facts as the basis for his complaint. Lloyd was employed on a probationary basis as a physician at Fort Logan Mental Health Center. His June 1980 job evaluation described him as "conscientious, thorough, and medically current." In July 1980, he became increas-ingly concerned about what he perceived to be over-use of restraints and medication on patients, the death of patients as a result of seclusion and excessive restraints, and the poor care and treatment of the mentally ill in violation of §§ 27–10–101, et seq., and 27–10.5–115, C.R.S. He repeatedly called these conditions to the attention of his supervisors, but no significant changes in patient care resulted.

On August 16, 1980, Lloyd wrote letters describing his concerns to the American Civil Liberties Union and the Mile High Medical Association and thereafter informed one of his supervisors of these actions. Lloyd's immediate supervisor, the president of the medical staff, and the acting director of Fort Logan met with him on August 18, 19, and 20 to discuss his behavior. During these meetings, Lloyd informed them that he had contacted the family of a patient who had died at Fort Logan, and had encouraged them to file a lawsuit against Fort Logan. Lloyd also refused to make an addendum to a patient's chart when ordered. He was terminated on August 20, 1980, for insubordination.

On August 21, 1980, Lloyd wrote to Colorado Governor Richard Lamm, informing him of the "substandard medical care and questionable administration techniques" he had observed at Fort Logan. The Governor ordered an investigation of Fort Logan's patient treatment policies. The resulting report concluded that Fort Logan had poor managerial organization and "pervasive and profound problems" in an adult psychiatric unit.

On August 27, 1980, Lloyd petitioned the State Personnel Board for reinstatement and informed the Board on October 1, 1980, that he would base his appeal, in part, on §§ 24–50.5–101–107, C.R.S. (1982 Repl.Vol. 10), the "whistle-blower statute," which protects state employees from disciplinary measures or harassment resulting from the disclosure of information concerning actions of state agencies which are not in the public interest.

After a great deal of correspondence and communication among Lloyd, the defendants, and the Attorney General's office, a preliminary examination was held before the Board's hearing officers on August 21 and 28, 1981. This examination specifically dealt with Lloyd's whistle-blower claim. These hearing officers recommended that a full hearing in front of the Board, concerning Lloyd's termination and his whistle-blower claim, be denied. The Board adopted this recommendation; thus, Lloyd's administrative procedures were exhausted as of October 27, 1981. Lloyd then initiated suit on December 10, 1981; however, no prior written notice was otherwise served on, or sent to, the Attorney General or other agents of the defendants.

Lloyd alleged three causes of action in his complaint: a violation of § 24–50.5–101, et seq., C.R.S. (1982 Repl.Vol. 10) (the whistle-blower statute); a violation of 42 U.S. C.A. § 1983; and the tort of abusive, wrongful, willful, wanton, and retaliatory discharge. The trial court granted defendants' motion for summary judgment as to the first and third claims concluding that Lloyd had not complied with the notice requirement in § 24–10–109, C.R.S. (1982 Repl.Vol. 10), the Governmental Immunity Act. This appeal followed.

### I.

Lloyd first contends that he substantially complied with the notice requirement, and therefore, summary judgment was improperly entered as to his third claim for relief. We disagree.

The General Assembly restored governmental immunities in part by its enactment of the Governmental Immunity Act, § 24–10–101, et seq., C.R.S. (1982 Repl.Vol. 10), and there specified the types of actions which may be brought against the state and its subdivisions. *Fritz v. Regents of University of Colorado*, 196 Colo. 335, 586 P.2d 23 (1978). That statute requires a claimant to provide the public entity with written notice of claims within 180 days after the date of discovery of the injury. Section 24–10–109(1), C.R.S. (1982 Repl.Vol.

10); *Forrest v. County Commissioners*, 629 P.2d 1105 (Colo.App.1981).

In pertinent part, § 24–10–109(2), C.R.S. (1982 Repl.Vol. 10) requires that the notice shall contain "[a] concise statement of the basis of the claim, including the date, time, place and circumstance of the act, omission, event complained of...." Compliance with the notice requirement is a condition precedent to any action brought by any person claiming to have suffered an injury by a public entity or a public employee in his official capacity. *Jones v. Northeast Durango Water District*, 622 P.2d 92 (Colo.App.1980).

Failure to file written notice is a complete defense to any action brought by an injured party against those that fall within the Act. *Roberts v. City of Boulder*, 197 Colo. 97, 589 P.2d 934 (1979). Actual knowledge by the governmental entity of an incident giving rise to a claim, or knowledge of the claim itself, does not necessarily constitute substantial compliance with the notice of claim requirement and does not relieve a plaintiff of his duty to provide formal notice. *Kristensen v. Jones*, 195 Colo. 122, 575 P.2d 854 (1978).

Lloyd's tort claim fell within the ambit of the notice requirements. He did not allege nor did he make any showing that he was incapable of giving the requisite notice. *Cf. Jacob v. City of Colorado Springs*, 175 Colo. 102, 485 P.2d 889 (1971). Thus, we conclude that compliance with the notice requirement was a condition precedent to plaintiff's tort claim and that the trial court's entry of summary judgment as to that claim was correct.

### II.

However, we decline to apply the notice requirement of the Governmental Immunity Act to plaintiff's whistle-blower claim.

Lloyd argues that, since the whistle-blower statute establishes a separate and distinct cause of action from those covered by the Governmental Immunity Act, notice is not required. We agree.

The statutory scheme encompassed in the Colorado Governmental Immunity Act is intended to cover all actions which lie, or could lie, against a governmental entity. Section 24–10–105, C.R.S. (1978 Repl.Vol. 10); *Forrest v. County Commissioners,* supra. The Act applies if there is an "injury"; which is defined as: "death, injury to a person, damage to or loss of property, of whatsoever kind, which would be actionable in tort *if inflicted by a private person."* Section 24–10–103(2), C.R.S. (1982 Repl.Vol. 10) (emphasis added).

■ The definition of "injury" is thus limited to those actions which could be brought in tort against one acting in a private capacity. The whistle-blower statute prohibits retaliation by a supervisor against a governmental employee on account of that employee's disclosure of information. Section 24–50.5–103, C.R.S. (1982 Repl.Vol. 10). The statute further provides for its own cause of action:

"Any employee ... may bring a civil action in the district court alleging a violation of Section 24–50.5–103. If the employee prevails, the employee may recover damages, together with court costs, and the court may order such other relief as it deems appropriate." Section 24–50.5–105, C.R.S. (1982 Repl.Vol. 10).

■ Since, by definition, an action brought under the whistle-blower statute must be predicated upon an injury inflicted by a person acting in a governmental rather than a private capacity, it could not be brought as a common law tort action. Hence, the provisions of the Immunity Act have no bearing on whistle-blower actions.

■ Statutes should be construed to effectuate the purposes for which they were enacted. *Firstbank of North Longmont v. Banking Board,* 648 P.2d 684 (Colo.App. 1982). The purpose of the Immunity Act is to give the public entity prompt notice of the need to investigate the matter, to allow for immediate abatement of dangerous conditions, to foster prompt settlement of meritorious claims, as well as to allow a knowledgeable compliance with the statutory requirements for budgeting and tax levies.

*Antonopoulos v. Town of Telluride,* 187 Colo. 392, 532 P.2d 346 (1975).

■ The whistle-blower statute, on the other hand, is intended to encourage the disclosure of information concerning actions of state agencies that are not in the public interest by deterring retaliation against state employees who make such disclosures. In effect, notice has already been given to the governmental entity which reacts by disciplining the employee. *See* § 24–50.5–103(2), C.R.S. (1982 Repl. Vol. 10). The whistle-blower statute is intended to protect the governmental employee, not the governmental entity. Thus, the contrary purposes of the Immunity Act and the whistle-blower statute negate the application of the notice requirements of the Act to whistle-blower actions.

Accordingly, the judgment is affirmed as to the entry of summary judgment on plaintiff's claim of wrongful discharge. It is reversed as to the entry of summary judgment on plaintiff's claim under the whistle-blower statute, and the cause is remanded for further proceedings.

STERNBERG and TURSI, JJ., concur.