STATE PERSONNEL BOARD of the State of Colorado and the Members Thereof, to-wit: Randall C. Mustain–Wood, Tucker K. Trautman, Lincoln L. Baca, Raymond C. Delisle, Jan Knoop and M. Eileen Perichetti, Secretary–Administrator, Thomas R. Moeller and Edward A. Turrou, Hearing Officers appointed by State Personnel Board of the State of Colorado Department of Institutions, a State Agency, Frank Traylor, its Director, Division of Mental Health, a State Agency, Robert Glover, Ph.D., its present Director, Fort Logan Mental Health Center, Joe Alexander, M.D., its Director, Petitioners,

v.

Judson F. LLOYD, M.D., Respondent.

No. 85SC400.

Supreme Court of Colorado,
En Banc.

March 7, 1988.

Rehearing Denied April 4, 1988.

Wood, Ris & Hames, P.C., Joel N. Varnell, Denver, Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia A. Love, Asst. Atty. Gen., Denver, for petitioners.

American Civil Liberties Union Foundation of Colorado, Inc., John M. Richilano, Denver, for respondent.

ERICKSON, Justice.

Following his discharge by the Fort Logan Mental Health Center, the respondent, Doctor Judson F. Lloyd, filed suit in Denver District Court alleging, among other grounds, retaliatory discharge under the whistleblower statute, section 24–50.5–103, 10 C.R.S. (1980 Supp.). The district court granted the petitioners' motion for summary judgment finding that, before initiating the action, the respondent had failed to comply with the 180–day notice of claim requirement of section 24–10–109, 10 C.R.S. (1973 & 1981 Supp.), of the Colorado Governmental Immunity Act. At the respondent's request, a final judgment was entered pursuant to C.R.C.P. 54(b), and the summary judgment was appealed to the court of appeals. The court of appeals, however, concluded that the provisions of the Immunity Act do not apply to actions under the whistleblower statute and re-

versed the district court's dismissal of the claim. *Lloyd v. State Personnel Bd.*, 710 P.2d 1177 (Colo.App.1985). We granted certiorari under C.A.R. 49 to determine whether an action brought under the whistleblower statute is subject to the notice provisions of section 24–10–109. The issue of substantial compliance with the notice provisions of section 24–10–109 was before the court of appeals, but was not an issue which we accepted for review when we granted certiorari and that issue was not briefed in this court.[1] Since the issue is not properly before us on certiorari, we do not address it on appeal. *See Berge v. Berge*, 189 Colo. 103, 536 P.2d 1135 (1975); *see also Carpenter v. Connecticut General Life Ins. Co.*, 68 F.2d 69 (10th Cir.1933) (assignments of error not raised either at oral argument or in brief are abandoned); *Contes v. Metros*, 111 Colo. 561, 144 P.2d 782 (1943) (error will not be considered on review by Colorado Supreme Court if not argued in brief). We now reverse and remand to the court of appeals with directions to affirm the dismissal of the whistleblower claim by the district court.

## I.

On December 4, 1979, Lloyd was hired as a physician on a probationary basis by the Department of Institutions, Division of Mental Health, Fort Logan Mental Health Center. In an evaluation covering the period from December 4, 1979, to June 30, 1980, Lloyd received an "above standard" rating and was described as overly conscientious, friendly, and medically current.

After the favorable evaluation, Lloyd notified his supervisors of his concern about the propriety of certain medical practices at Fort Logan.

When his supervisors ignored his actions, Lloyd wrote letters to the American Civil Liberties Union and the Mile High Medical Association alleging numerous violations of the civil liberties of mental health patients at Fort Logan. He contended that the facility used excessive restraints and medication on patients and administered substandard medical care, which resulted in at least one death. He also notified one of his supervisors of the letters.

On August 18, 19, and 20, Lloyd met with his immediate supervisor, the president of the medical staff, and the acting director of Fort Logan to discuss his behavior. Lloyd informed them that he had encouraged the family of a patient who had died at Fort Logan to file a lawsuit against the facility. He refused to discontinue his involvement with the family and to comply with the directions of his supervisors. On August 20, 1980, Lloyd was dismissed for insubordination and exercising poor judgment.

On August 27, 1980, Lloyd petitioned the State Personnel Board (Board) for reinstatement and backpay. He informed the Board on October 1, 1980, that he would base part of his appeal on the whistleblower statute, section 24–50.5–103, 10 C.R.S. (1980 Supp.). He claimed that his discharge was in retaliation for his letters and his outspoken manner towards the quality of patient care at Fort Logan.[2] Pursuant

---

**1.** Any reference to substantial compliance during oral argument was peripheral and was beyond the issues briefed by the parties in the supreme court. The only reference by Lloyd to his compliance with the notice provision was the following statement: "[F]or his failure to give notice under the Governmental Immunity Act statute his [Lloyd's] rights under the whistleblower statute should not be cut off or fettered in any way. To do so would be to exalt form over substance." Lloyd's counsel stated that the common law negligence action in Lloyd's complaint was properly dismissed on summary judgment by the district court for noncompliance with the notice provision of the Immunity Act. He also stated: "If Judson Lloyd had filed this action not having been a state employee or not utilizing the whistleblower statute, he would

be out of court on this [whistleblower] claim and on the common law claim."

**2.** Section 24–50.5–103 provides:

(1) Except as provided in subsection (2) of this section, no appointing authority or supervisor shall initiate or administer any disciplinary action against an employee on account of the employee's disclosure of information. This section shall not apply to:

(a) An employee who discloses information that he knows to be false or who discloses information with disregard for the truth or falsity thereof;

(b) An employee who discloses information from public records which are closed to public inspection pursuant to section 24–72–204;

to section 24–50.5–104, 10 C.R.S. (1980 Supp.), the Board referred the appeal to the Department of Personnel for investigation, and adopted the Department's findings that there was no reasonable basis for Lloyd's charges of retaliation.

Lloyd petitioned the Board under Personnel Board Rule 8–2–2(c)(3)(b) for a full investigatory hearing concerning his termination and whistleblower claim. The Board ordered a preliminary examination by a hearing officer to determine whether a full hearing was necessary. After reviewing the information submitted by the parties, the hearing officer concluded that the bases for Lloyd's termination were "insubordination for failure to follow hospital policy [and] correct an opinion remark from a patient's chart after being directed to do so by his supervisor, and [his] poor working relationship with team members." The Board unanimously adopted the hearing officer's recommendations and denied Lloyd's request for a full investigatory hearing.

On November 24, 1981, after exhausting his administrative remedies, Lloyd filed a complaint in the Denver County District Court. The complaint alleged three causes of action: (1) a violation of the whistleblower statute, section 24–50.5–103, 10 C.R.S. (1980 Supp.); (2) a violation of 42 U.S.C. § 1983 (1980 Supp.); and (3) the common law tort of retaliatory discharge. In the complaint, he sought compensation for the following injuries: (1) harm to his reputation and ability to earn a living as a physician; (2) emotional injuries caused by the humiliation of his termination; and (3) the destruction of the value of his professional education. Prior to filing suit, Lloyd did not provide written notice, pursuant to section 24–10–109, 10 C.R.S. (1973 & 1981 Supp.), to the Attorney General or other defendants named in the complaint.

After filing an answer to the complaint denying Lloyd's allegations, the defendants moved for summary judgment. They argued that Lloyd's failure to comply with the notice of claim requirement of section 24–10–109 was a complete defense to Lloyd's claims based on the whistleblower statute and the common law tort of retaliatory discharge. The district court agreed and dismissed both counts.

On appeal, the court of appeals affirmed the dismissal of the common law tort claim but reversed the dismissal of the whistleblower claim. The court found that the provisions of the Governmental Immunity Act (Immunity Act), sections 24–10–101 to –118, 10 C.R.S. (1973 & 1981 Supp.), were not applicable to a claim under the whistleblower statute. It reasoned that the definition of "injury" under section 24–10–103(2) is limited "to those actions which could be brought in tort against one acting in a private capacity." [3] *Lloyd v. State Personnel Bd.*, 710 P.2d 1177, 1180 (Colo.App. 1985). Since a claim under the whistleblower statute is based on conduct of a person acting in a "governmental" rather than a "private" capacity, the court concluded that the notice of claim provision of the Immunity Act did not apply to Lloyd's whistleblower claims.

## II.

The issues raised on appeal center on section 24–10–109, 10 C.R.S. (1973 & 1981

---

(c) An employee who discloses information which is confidential under any other provision of law.

(2) It shall be the obligation of an employee who wishes to disclose information under the protection of this article to make a good faith effort to provide to his supervisor or appointing authority or member of the general assembly the information to be disclosed prior to the time of its disclosure.

Section 24–50.5–105, which permits civil actions for violations of section 24–50.5–103, states:

Any employee not in the state personnel system, or any employee in the state personnel system who has filed a complaint under section 24–50.5–104(1) but no reasonable basis was found for the charges, may bring a civil action in district court alleging a violation of section 24–50.5–103. If the employee prevails, the employee may recover damages, together with court costs, and the court may order such other relief as it deems appropriate.

**3.** Section 24–10–103(2), 10 C.R.S. (1973), defines "injury" as "death, injury to a person, damage to or loss of property, of whatsoever kind, which would be actionable in tort if inflicted by a private person."

Supp.), of the Colorado Governmental Immunity Act[4] which provides as follows:

(1) Any person claiming to have suffered an injury by a public entity or by an employee thereof, while in the course of such employment shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury. Substantial compliance with the notice provisions of this section shall be a condition precedent to any action brought under the provisions of this article, and failure of substantial compliance shall be a complete defense to any such action.

(2) The notice shall contain the following:

(a) The name and address of the claimant, and the name and address of his attorney, if any;

(b) A concise statement of the basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of;

(c) The name and address of any public employee involved, if known;

(d) A concise statement of the nature and the extent of the injury claimed to have been suffered;

(e) A statement of the amount of monetary damages that is being requested.

(3) If the claim is against the state or an employee thereof, the notice shall be presented to the attorney general. If the claim is against any other public entity or an employee thereof, the notice shall be presented to the governing body of the public entity or the attorney representing the public entity.

(4) When the claim is one for death by wrongful act or omission, the notice may be presented by the personal representative, surviving spouse, or next of kin of the deceased.

(5) Any action brought pursuant to this article shall be commenced within the time period provided for that type of action in articles 80 and 81 of title 13, C.R.S. 1973, relating to limitation of actions, or it shall be forever barred.

The failure to substantially comply with the notice of claim provision is a complete defense to any action subject to section 24–10–109. *Roberts v. City of Boulder,* 197 Colo. 97, 589 P.2d 934 (1979).

Lloyd claims that the notice of claim provision of the Governmental Immunity Act does not apply to claims based on the whistleblower statute, section 24–50.5–103. He argues that his claim was brought under section 24–50.5–103, and not under the Immunity Act, and that, by its terms, the notice of claim provision does not apply. He contends that the whistleblower statute creates a new, statutory cause of action and not a common law tort falling within the provisions of the Immunity Act. Finally, he asserts that the Immunity Act and the whistleblower statute have contrary purposes and that the requirements of section 24–50.5–103 for bringing a civil suit fulfill the purpose of the Immunity Act's notice provision. We disagree.

Our primary task in construing a statute is to ascertain and effectuate the intent of the General Assembly. *People v. Guenther,* 740 P.2d 971 (Colo.1987); *People v. District Court,* 713 P.2d 918 (Colo.1986); *see Smith v. Myron Stratton Home,* 676 P.2d 1196 (Colo.1984) (holding that the construction of a statute that best implements the purposes of the General Assembly must be chosen). In divining the intent of the General Assembly, the entire act must be read and considered in context. *Travelers Indem. Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976); *Humana, Inc. v. Board of Adjustment of Lakewood,* 189 Colo. 79, 537 P.2d 741 (1975). Factors that

---

**4.** The Colorado Governmental Immunity Act, sections 24–10–101 to –118, 10 C.R.S. (1973 & 1981 Supp.), was enacted in 1971 in response to three Colorado Supreme Court decisions that prospectively overruled prior decisions recognizing a defense of governmental immunity in tort actions. *See Evans v. Board of County Comm'rs,* 174 Colo. 97, 482 P.2d 968 (1971);

*Flournoy v. School Dist. No. One,* 174 Colo. 110, 482 P.2d 966 (1971); *Proffitt v. State,* 174 Colo. 113, 482 P.2d 965 (1971).

The whistleblower statute was enacted in 1979 as part of the State Employee Protection Act, sections 24–50.5–101 to –107, 10 C.R.S. (1980 Supp.).

may be considered in determining legislative intent include the legislative declaration of purpose and the consequences of different statutory constructions. *United States v. Wilkinson,* 686 P.2d 790 (Colo. 1984).

Section 24–10–102, the General Assembly's declaration of policy behind the Governmental Immunity Act, provides that "[t]he general assembly ... recognizes the desirability of including within one article *all* the circumstances under which the state, any of its political subdivisions, or the public employees of such public entities may be liable *in actions other than contract....*" [5] (Emphasis added.) Section 24–10–105 states that "[i]t is the intent of this article to cover *all* actions *which lie in or could lie in tort* regardless of whether that may be the type of action chosen by the claimant...." (Emphasis added.) *See* §§ 24–10–103(2), 106(1), 118(1), 10 C.R.S. (1973 & 1981 Supp.). The clear import of this language is that the Governmental Immunity Act was intended to apply to all actions against public entities or their employees which lie, or could lie, in tort but not contract.[6]

In our view, the General Assembly intended actions under the statute to be subject to the notice of claim provision of the Immunity Act. In enacting section 24–50.-5–103, the General Assembly created a noncontractual, statutory action for retaliatory discharge that is tortious in nature. *Julesburg School Dist. No. RE–1 v. Ebke,* 193

Colo. 40, 562 P.2d 419 (1977); *Newt Olson Lumber Co. v. School Dist. No. 8,* 83 Colo. 272, 263 P. 723 (1928). Because section 24–50.5–103 is a statutory tort, the expressed intent of the General Assembly requires that actions under the statute be subject to the notice of claim provision of the Governmental Immunity Act.[7]

Our construction is supported by the omission of certain key provisions from the State Employee Protection Act (Employee Protection Act), sections 24–50.5–101 to –107. Unlike the Employee Protection Act, the Immunity Act specifically provides for a statute of limitations, *see* sections 24–10–109(5), –118(1)(a); the availability of insurance, *see* section 24–10–115; the payment of judgments in general, *see* section 24–10–113, and against public employees, *see* section 24–10–110; the settlement of claims against the state or a public entity, *see* section 24–10–112; the effect of a judgment against a public entity or public employee, *see* section 24–10–111; and the limits on judgments against a public entity, *see* section 24–10–114. The conspicuous absence of these provisions from the Employee Protection Act strongly suggests that the General Assembly intended whistleblower actions to be subject to the provisions of the Immunity Act.

Lloyd contends that the provisions of the Immunity Act apply only to common law torts, but his construction cannot be reconciled with the plain language of the Act.[8]

---

5. The language was amended in 1986 to read as follows:

> The general assembly also recognizes the desirability of including within one article all the circumstances under which the state, any of its political subdivisions, or the public employees of such public entities may be liable in actions which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant....

6. The following causes of action against public entities have been held to be outside the coverage of the Immunity Act: *Julesburg School Dist. No. RE–1 v. Ebke,* 193 Colo. 40, 562 P.2d 419 (1977) (breach of contractual duty); *Antonopoulos v. Town of Telluride,* 187 Colo. 392, 532 P.2d 346 (1975) (indemnity claim under Liability of Peace Officers Act, section 29–5–111, 12A C.R.S. (1973)); *Jones v. Northeast Durango Water Dist.,*

622 P.2d 92 (Colo.App.1980) (mandamus action); *SRB v. Board of County Comm'rs of Larimer County,* 43 Colo.App. 14, 601 P.2d 1082 (1979) (property damage claims under the just compensation clause of the Colorado Constitution, article II, section 15); *Hayden v. Board of County Comm'rs of Jefferson County,* 41 Colo. App. 102, 580 P.2d 830 (1978) (inverse condemnation action under Colo. Const. art. II, § 15).

7. We express no opinion on whether Colorado recognizes the common law tort of retaliatory discharge against either public or private entities.

8. Lloyd asserts that *Antonopoulos v. Town of Telluride,* 187 Colo. 392, 532 P.2d 346 (1975), stands for the proposition that all actions brought under a statute not contained in the Immunity Act are immune to the notice of claim provision. We do not agree. In *Antono-*

Section 24–10–102 states that the Act applies to all actions other than contract. Section 24–10–118(1) of the Act applies to "[a]ny action against a public employee, whether brought pursuant to this article, section 29–5–11, C.R.S. 1973, the common law, *or otherwise,* which lies in tort...." (Emphasis added.) *See also* § 24–10–105. Nowhere does the General Assembly distinguish between torts recognized at common law or by statute.[9] Limiting the Act solely to common law torts would conflict with the plain language of sections 24–10–102 and 24–10–118(1). We decline to read the provisions of the Act so narrowly.

Lloyd also argues that the application of the notice of claim provision of the Immunity Act to whistleblower claims will frustrate the purpose of the Employee Protection Act. We disagree. The Employee Protection Act is intended to reduce governmental waste and mismanagement, to reduce abuses in governmental authority, and to prevent illegal and unethical practices by encouraging state employees to disclose relevant information without fear of reprisal. § 24–50.5–101. So long as the procedural requirements of the Immunity Act are satisfied, whistleblower claims will not be barred. In our view, the application of the Immunity Act's notice provision will actually further the achievement of the goals of the Employee Protection Act. Early notice of an impending suit will foster prompt settlement of meritorious actions and encourage prompt investigation of all whistleblower claims. *See Antono-*

*poulos v. Town of Telluride,* 187 Colo. 392, 532 P.2d 346 (1975).

Finally, Lloyd asserts that it is unnecessary to apply the notice of claim provision to whistleblower claims because compliance with the requirements of section 24–50.5–104 for bringing a civil suit under the State Employee Protection Act will fulfill the purposes of the Immunity Act's notice provision. Under section 24–50.5–104 of the Employee Protection Act, a discharged employee in the state personnel system must file a written complaint with the State Personnel Board prior to filing a suit in district court. The employee may initiate a civil suit only after the personnel board has investigated the case and found no reasonable basis for the alleged violation of section 24–50.5–103. Section 24–10–109 of the Immunity Act requires written notice to be presented to the Attorney General, if the claim is against the state, and in all other cases to the governing body of the public entity or its attorney.

In our view, compliance with the administrative requirements of the Employee Protection Act will not satisfy the purposes of the Immunity Act's notice provision. In *Antonopoulos v. Town of Telluride,* 187 Colo. 392, 398, 532 P.2d 346, 349–50 (1975), we stated that the purposes of the notice provision are:

> to give the municipal authorities prompt notice of the need to investigate the matter, to allow for immediate abatement of dangerous conditions, to foster prompt settlement of meritorious claims, as well

*poulos,* a suit was brought against the town of Telluride after some of its police officers had allegedly committed a tort. Telluride's liability was based on the negligence of the town itself and its responsibility as an indemnitor of its employees under the Liability of Peace Officers Act, section 29–5–111, 12A C.R.S. (1973). We applied the notice of claim provision of the Immunity Act to the tort claim against Telluride and the notice requirements in the Liability of Peace Officers Act to the indemnity claim. The legislative history indicated no intent to apply the Immunity Act's provisions to claims under the Peace Officers Act. The enactment of the Immunity Act also had no effect on the liability of a municipality under section 29–5–111 for the actions of its police officers. *See* § 29–5–111 (waiving sovereign immunity for indemnity actions under the Liability of Peace Officers Act).

Finally, the secondary liability of a governmental entity under section 29–5–111 differs from the direct liability for tort claims imposed by the Immunity Act. *Antonopoulos,* 187 Colo. at 397, 532 P.2d at 349. The General Assembly subsequently amended section 24–10–118 to apply the notice requirement to actions brought under section 29–5–111.

9. In recommending the Governmental Immunity Act to the General Assembly, the Colorado Legislative Council defined "tort" as follows: "A 'tort' is a civil, as opposed to a criminal, wrong arising from an act other than a breach of contract and usually involves injury to persons or damage to property." Colorado Legislative Council, Governmental Liability in Colorado, at 5 (1968).

as to allow a knowledgeable compliance with the statutory requirements for budgeting and tax levies.

Notice to the State Personnel Board will notify only the State Personnel Board of a grievance that may or may not be pursued by the disgruntled employee; it will not serve as notice to the Attorney General or the public entity of an impending lawsuit.

Section 24–50.5–104 does not apply in every case of retaliatory discharge under section 24–50.5–103. Section 24–50.5–105 exempts employees *not* in the state personnel system from having to comply with the provisions of section 24–50.5–104 prior to filing suit in district court. Article XII, section 13(2) of the Colorado Constitution and section 24–50–135, 10 C.R.S. (1973), define classes of state employees that are outside the state personnel system. If such employees should initiate an action under section 24–50.5–103, there will be no required notice of any kind prior to the suit and the purposes of the notice of claim provision will be emasculated.

We also disagree with the court of appeals interpretation of section 24–10–103. Section 24–10–103(2), 10 C.R.S. (1973), defines "injury" as "death, injury to a person, damage to or loss of property, of whatsoever kind, which would be actionable in tort if inflicted by a private person." The court of appeals concluded that a claim of retaliatory discharge under section 24–50.5–103 is not an "injury" under the Immunity Act because the actual dismissal of the employee was done by a governmental entity rather than a private person.

In our view, the court of appeals has misconstrued the statute. Section 24–10–106(1) waives sovereign immunity in certain enumerated instances, none of which, by its strict terms, constitutes the basis of a claim for relief against a private person. Section 24–10–103(2) uses the phrase "actionable in tort if inflicted by a private person" to define the injuries recoverable under the Immunity Act; it does not use the phrase to specify the claims for relief that are subject to the Act. Here, Lloyd's injuries, harm to his professional reputation and ability to earn a living, pain and suffering, and destruction of the value of his professional education, are injuries included within section 24–10–103(2).

When an employee brings suit under the whistleblower statute seeking relief for injuries covered by section 24–10–103(2), compliance with the notice of claim provision of the Immunity Act is necessary. Since Lloyd failed to comply with the notice of claim provision, which, as a condition precedent to any action, must be satisfied before the service of the summons and the filing of the complaint in the Denver District Court, the district court properly dismissed Lloyd's claim under section 24–50.5–103. The judgment is reversed and the case is remanded to the court of appeals with directions to affirm the dismissal of the whistleblower claim by the district court.

QUINN, C.J., dissents in part and MULLARKEY, J., dissents.

QUINN, Chief Justice, dissenting in part:

I join Part II of Justice Mullarkey's dissent. Although I believe that the notice requirements of the Governmental Immunity Act apply to a civil action arising out of the so-called Whistleblower Act, Justice Mullarkey's dissent convinces me that Doctor Lloyd substantially complied with the notice provisions of the Governmental Immunity Act under the rather peculiar circumstances of this case. I would remand the case to the court of appeals with directions to return the case to the district court for trial.

MULLARKEY, Justice, dissenting:

I respectfully dissent because I find no evidence that the legislature intended to subject a civil action brought pursuant to the Whistleblowers Act, section 24–50.5–101, 10 C.R.S. (1982), to the notice requirements of the Governmental Immunity Act, sections 24–10–109 and –118, 10 C.R.S. (1982). Alternatively, I would find that the plaintiff substantially complied with the notice requirements. For these reasons, I would affirm the judgment of the Court of Appeals remanding this case for further proceedings.

## I.

In *Antonopoulis v. Town of Telluride*, 187 Colo. 392, 532 P.2d 346 (1975), we rejected Telluride's claim that an action brought pursuant to the Liability of Peace Officers statute, now codified as section 29–5–111, 12A C.R.S. (1986), was subject to the notice requirement of section 24–10–109. The plaintiff in *Antonopoulis* sought damages for personal injuries and property damage. He claimed that the Telluride police officers were negligent because they arrested him for public intoxication but released him and instructed him to leave town. Shortly after he drove out of town, he was involved in a car accident.

In *Antonopoulis*, we were not persuaded that notice must be given under the Governmental Immunity Act. Rather, we held that "[t]he requirements of the Immunity Act are extraneous to the Town's liability under the Liability of Peace Officers Act." We rejected the defendants' suggestion "that the history of the two acts, together with the language of the Immunity Act, makes it clear that the two are to be read in conjunction with each other" because we were "unable to discern such a legislative intent." We emphasized that "[c]ompliance with the notice requirement is a condition precedent only to actions brought under the provisions of the Immunity Act." 187 Colo. at 397, 532 P.2d at 349. The Liability of Peace Officers Act and the Governmental Immunity Act both were adopted by the legislature in 1971. Both were approved on May 22, 1971, and took effect on July 1, 1972. *See* Ch. 255, sec. 2, 1971 Colo. Sess. Laws 1048, 1049, and ch. 323, sec. 20, 1971 Colo. Sess. Laws 1204, 1218. Neither act made reference to the other.

We have the same situation in this case. The Whistleblowers Act was passed and the notice provisions of the Governmental Immunity Act were amended in the same session of the General Assembly. Neither act referenced the other. The Whistleblowers Act was effective upon its approval on June 15, 1979. Ch. 250, sec. 4, 1979 Colo. Sess. Laws 965, 968. The amendments to the Governmental Immunity Act were approved on June 15, 1979 and took effect on July 1, 1979. Ch. 219, sec. 8, 1979 Colo. Sess. Laws 862, 865.

The latter act made two changes in the notice provisions of the Governmental Immunity Act. First, it amended section 24–10–109 to increase the notice period from 90 to 180 days after the date of the discovery of the injury. As amended, section 24–10–109(1) read:

(1) Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury. Substantial compliance with the notice provisions of this section shall be a condition precedent to any action brought under the provisions of this article, and failure of substantial compliance shall be a complete defense to any such action.

Second, it added a new section 24–10–118 entitled "Actions Against Public Employees—Requirements and Limitations" which provided in relevant part as follows:

(1) Any action against a public employee, whether brought pursuant to this article, section 29–5–111, C.R.S. 1973, the common law, or otherwise, which lies in tort, and which arises out of injuries sustained from an act or omission of such employee occurring during the performance of his duties and within the scope of his employment, shall be subject to the following requirements and limitations, regardless of whether or not such action against a public employee is one for which the public entity might be liable for costs of defense or payment of judgment or settlement under section 24–10–110:

(a) Filing of the notice required by section 24–10–109 with the public entity, in the form and within the time provided by section 24–10–109, shall be a condition precedent to any such action against a public employee, and failure of substantial compliance shall be a complete defense to any such action against a public employee. Any such action against a

public employee shall be commenced within the time period provided for that type of action in articles 80 and 81 of title 13, C.R.S. 1973, relating to limitations of actions, or it shall be forever barred.

Sections 24–10–109 and –118 as enacted in 1979 and set forth above were in effect at the time this case arose. Both sections are relevant here because the plaintiff has brought suit against both public employees and governmental entities.

As a rule of statutory construction, the legislature generally is presumed to be aware of relevant case precedent when it enacts subsequent legislation. *E.g., Hewlett–Packard Co. v. Colorado,* 749 P.2d 400 (Colo.1988); *Rauschenberger v. Radetsky,* 745 P.2d 640 (Colo.1987); *Thompson v. People,* 181 Colo. 194, 510 P.2d 311 (1973). In addition to the usual presumption, we also have clear evidence that the legislature considered the *Antonopoulis* decision and directly addressed it. As quoted above, section 24–10–118(1) expressly refers to section 29–5–111 (Liability of Peace Officers Act) and makes civil actions brought pursuant to section 29–5–111 subject to the notice requirements of the Governmental Immunity Act. Thus, when it amended the Governmental Immunity Act, the legislature was aware of our holding that a statutory cause of action was not subject to the notice requirements unless the legislature indicated its intent to apply the notice provision and it acted affirmatively to impose the notice requirements on the Liability of Peace Officers Act.

With this knowledge, the legislature took no action imposing a notice requirement on civil actions brought under the Whistleblowers Act. Instead of notice, an elaborate administrative procedure, which must be followed by state employees like Lloyd, was built into the Whistleblowers Act. Neither in the Whistleblowers Act nor in the Governmental Immunity Act is there any language indicating that the legislature intended to subject such lawsuits to the notice requirements of the Governmen-

tal Immunity Act. The legislative histories of the two 1979 acts are similarly silent. Under these circumstances, I think it is not reasonable to infer that the legislature intended the notice requirements to apply to the Whistleblowers Act. Accordingly, I would hold that a civil action brought pursuant to section 24–50.5–105 is not subject to the notice requirements of the Governmental Immunity Act.

## II.

Assuming, however, that the notice provisions of the Governmental Immunity Act are applicable, I believe that the plaintiff has substantially complied with the notice requirements. Section 24–10–109(1), as then in effect, expressly provided that the notice requirements were satisfied by substantial compliance.

The majority states that this issue is not properly before the court because it is not an issue which we accepted for review and it was not briefed in this court. At 559. I do not find this reasoning persuasive.

I note first that the majority does reach the plaintiff's argument that compliance with the procedural requirements of the Whistleblowers Act fulfills the purposes of the notice requirements of the Governmental Immunity Act. At 564–565. This argument can only be construed as one of substantial compliance. The majority's analysis of this issue is inconsistent with its assertion that the question of substantial compliance is not properly before this court.

C.A.R. 53(a)(1) provides that the statement of an issue in a petition for certiorari "will be deemed to include every subsidiary issue clearly comprised therein" and that issues "fairly comprised therein will be considered." *See Vigoda v. Denver Urban Renewal Auth.,* 646 P.2d 900 (Colo.1982). The United States Supreme Court, in interpreting the almost identical language of Sup.Ct.R. 21.1(a),[1] has held that it "is not limited by the precise terms of the question

1. Sup.Ct.R. 21.1(a) states in pertinent part: "The statement of a question presented will be deemed to comprise every subsidiary question

fairly included therein. Only the questions set forth in the petition or fairly included therein will be considered by the Court."

presented" and the "fairly comprised" standard is met if an issue is essential to analysis of the lower court decision, *Procunier v. Navarette,* 434 U.S. 555, 559–60 n. 6, 98 S.Ct. 855, 858–59 n. 6, 55 L.Ed.2d 24 (1978), or essential to the correct disposition of the stated issue, *United States v. Mendenhall,* 446 U.S. 544, 551–52 n. 5, 100 S.Ct. 1870, 1875–76 n. 5, 64 L.Ed.2d 497, *reh'g denied,* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980); *see also Pulliam v. Allen,* 466 U.S. 522, 528 n. 5, 104 S.Ct. 1970, 1974–75 n. 5, 80 L.Ed.2d 565 (1984) (the issue of whether judicial immunity bars an award of attorneys' fees against a judge includes the question of whether judicial immunity bars the injunctive relief awarded); *Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n,* 461 U.S. 375, 382 n. 6, 103 S.Ct. 1905, 1911–12 n. 6, 76 L.Ed.2d 1 (1983) (question of statutory preemption is properly included within a challenge based upon the Commerce Clause).

This court granted certiorari to determine whether an action brought under the Whistleblowers Act is subject to the notice provisions of section 24–10–109. At 559. Section 24–10–109 explicitly provides that substantial compliance satisfies the notice provisions. To reach a correct disposition of this issue, in the context of this case, the court must determine whether there was substantial compliance with the notice provisions. Thus, I would find that the issue of substantial compliance is fairly comprised within the issues upon which we granted certiorari.

There is also a second, independent reason why the issue of substantial compliance is before us. As the Supreme Court has held repeatedly, the party prevailing in the court below is entitled to rely upon any grounds presented in the lower courts to support the judgment below despite a failure to cross-petition for certiorari on that basis. *Blum v. Bacon,* 457 U.S. 132, 137 n. 5, 102 S.Ct. 2355, 2359 n. 5, 72 L.Ed.2d 728 (1982); *Dayton Bd. of Educ. v. Brinkman,* 433 U.S. 406, 419, 97 S.Ct. 2766, 2775, 53 L.Ed.2d 851 (1977); *United States v. New York Tel. Co.,* 434 U.S. 159, 166 n. 8, 98 S.Ct. 364, 369 n. 8, 54 L.Ed.2d 376; *see also*

*Washington v. Confederated Bands and Tribes,* 439 U.S. 463, 476 n. 20, 99 S.Ct. 740, 749–50 n. 20, 58 L.Ed.2d 740 *reh'g denied,* 440 U.S. 940, 99 S.Ct. 1290, 59 L.Ed.2d 500 (1979) ("[a]s the prevailing party, the appellee was of course free to defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the [lower court]"); *Thigpen v. Roberts,* 468 U.S. 27, 29–30, 104 S.Ct. 2916, 2918, 82 L.Ed.2d 23 (1984) (Court may affirm the judgment below "on any ground that the law and the record permit and that will not expand the relief granted below"); *see generally* 9 J. Moore, B. Ward, & J. Lucas, *Moore's Federal Practice* ¶ 204.11[3] (2d ed. 1987). A leading treatise on Supreme Court practice correctly notes a practical reason for finding that a cross-petition is unnecessary in this type of case:

> The practical justification for the rule is that a party satisfied with the action of a lower court should not have to appeal from it in order to defend a judgment in his favor on any ground no matter what his adversary does. Indeed, in other contexts, it has been said that a party has no right to appeal from a decision in his favor.

R. Stern, E. Gressman, & S. Shapiro, *Supreme Court Practice* 382 (6th ed. 1986) (footnote omitted).

The substantial compliance argument was fully presented by the plaintiff in his response to motion for summary judgment in the district court and in his opening and reply briefs to the court of appeals. The court of appeals held that the notice provisions of the Governmental Immunity Act did not apply, 710 P.2d at 1179–80, and therefore did not reach this issue in the context of the plaintiff's whistleblower claim. Nevertheless, the plaintiff explicitly stated at oral argument in front of this court that he did not concede the substantial compliance issue. I therefore conclude that the plaintiff was not required to cross-petition and this issue is properly presented for review.

The defendants conceded in their motion for summary judgment that the 180 day

notice period began to run on October 27, 1981, the date on which the administrative proceedings concluded.[2] Thus, the 180 day notice period would have expired on April 25, 1982. The plaintiff filed his initial complaint on November 24, 1981. More than six months passed with no recorded action on the case. During that time, the defendants filed no motions or responsive pleading. The plaintiff filed an amended complaint on June 1, 1982, with the parties stipulating that the defendants reserved all of their rights as if the amended complaint were an original complaint. The defendants filed their answer on May 20, 1983, and their motion for summary judgment on October 21, 1983. The notice issue was raised in those pleadings.

Section 24–10–109(2) required that the notice contain the name and address of the claimant, the name and address of the claimant's attorney, a concise statement of the basis of the claim, the name and address of any public employee involved, if known, a concise statement of the nature and the extent of the injury claimed to have been suffered, and a statement of the amount of monetary damages that is being requested. The plaintiff's initial complaint satisfies all of these requirements. Section 24–10–109(3) provided that if the claim is against a public entity other than the state or an employee thereof, the notice shall be presented to the governing body of the public entity or the attorney representing the public entity. The attorney general is representing all of the defendants in this action. On December 10, 1981, a copy of the complaint was served upon the attorney general, well within the 180 day period.

Where the purpose of a notice statute is met, the claimant has substantially complied with such statute. *Powers v. Boulder*, 54 Colo. 558, 131 P. 395 (1913) (where the purpose of a notice statute is to give the mayor and city council notice of the

claim of damage, service upon mayor rather than city clerk complies with statute); *Emcasco Ins. v. Dover*, 678 P.2d 1051 (Colo.App.1983) (where the purpose of a notice provision is to make certain the insurer is informed of suits filed against an insured, notice given twenty months prior to the trial date, although six weeks after the filing of a counterclaim, substantially complies with the notice requirement despite a failure to strictly comply with a requirement to forward the suit papers); *Strong Bros. v. Estate of Strong*, 666 P.2d 1109 (Colo.App.1983) (although statute not strictly complied with, where goal of speedy and efficient distribution of decedent's estate met, adequate notice given). Form should not be exalted over substance when construing the Governmental Immunity Act's notice provision. *Isbill Assocs. v. City and County of Denver*, 666 P.2d 1117 (Colo.App.1983); *see Strong Bros.*, 666 P.2d at 1111. Notice statutes should be interpreted to achieve a reasonable result and to avoid an unjust one. *Strong Bros.*, 666 P.2d at 1112.

This court decided a similar question in *Canon City v. Cox*, 55 Colo. 264, 133 P. 1040 (1913). The statute at issue required notice of a personal injury claim against the defendant city to be given within ninety days of the occurrence of the accident causing the injury. Within sixty days of the injury, the plaintiff instituted a suit against the city without having given the required notice. The plaintiff voluntarily dismissed the first action and commenced a second one. This court held that, because the original complaint contained all of the required elements of notice, the object of the law was accomplished and notice had been given.

Although not decided under the Governmental Immunity Act, the *Canon City* case is factually indistinguishable from the

---

**2.** Any other conclusion would result in the notice provision running prior to the completion of the administrative proceedings required by the Whistleblowers Act. A party in the position of the plaintiff may not file suit until these proceedings have been concluded, and he is permitted to bring suit only if he does not prevail in the administrative proceedings.

§ 24–50.5–105, 10 C.R.S. (1982). To require a litigant to give notice of his intent to file a lawsuit prior to the date on which, by statute, he can file the lawsuit would be an absurd result which could not have been intended by the General Assembly. *See, e.g., Ingram v. Cooper*, 698 P.2d 1314 (Colo.1985).

present case. In recent cases, we have held that strict compliance is not necessary under the Governmental Immunity Act. *See Isbill Assocs.*, 666 P.2d 1117 (notice provision of the Immunity Act complied with despite that the notice was given by the injured party's insurer rather than the injured party itself and that the notice was given to the mayor of Denver rather than its governing body or attorney); *Uberoi v. University of Colo.*, 713 P.2d 894 (Colo. 1986) (filing of a complaint may satisfy the notice requirement of the Immunity Act if it is presented to the proper party); *Gray v. Regional Transp. Dist.*, 43 Colo.App. 107, 602 P.2d 879 (1979) (filing of RTD claim form may meet the notice requirement of the Immunity Act). The *Canon City* case is consistent with our decisions under the Governmental Immunity Act and it should be followed here.

The equities do not favor the defendants' position. Although the record does not disclose what occurred during the six months after the first complaint was filed, it appears that the parties must have been in negotiations. Otherwise, the defendants could, and probably would, have been defaulted for failing to file a responsive pleading. Had the defendants raised the notice issue promptly in response to the first complaint, the plaintiff could have cured any technical defect by sending a notice. The defendants, of course, chose to wait and did not raise the notice question until after the 180 day period had run. By agreeing to permit the original complaint to be withdrawn and a new complaint to be filed in its stead, I believe the defendants accepted the first complaint as notice and I would so hold.

I am authorized to state that QUINN, C.J., joins in Part II of this dissent.