580 P.2d 830 (1978)
St. Claire Okie HAYDEN and John O. Hayden, Plaintiffs-Appellees and Cross-Appellants,
v.
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF JEFFERSON, Defendant-Appellant and Cross-Appellee,
The State Department of Highways, Division of Highways, State of Colorado, Defendant.
No. 77-118.
Colorado Court of Appeals, Div. I.
June 1, 1978.
*832 Clark, Martin & Pringle, Bruce D. Pringle, Denver, for plaintiffs-appellees and cross-appellants.
Patrick R. Mahan, County Atty., Richard F. Mutzebaugh, Asst. County Atty., Golden, for defendant-appellant and cross-appellee.
ENOCH, Judge.
In April 1974, plaintiffs, St. Claire Hayden and John Hayden, instituted an inverse condemnation proceeding against defendants, Jefferson County Commissioners and the State Highway Department. Plaintiffs claimed compensation for approximately 17 acres taken in conjunction with the relocation and construction of a Jefferson County Road called Rooney Road. They also sought residual damages. The Board of County Commissioners appeals from the judgment entered against it, awarding plaintiffs $121,116, and plaintiffs cross-appeal from the denial of their motion for attorneys' fees. We affirm the judgment for damages and reverse the ruling on attorneys' fees.
In 1965, plaintiffs agreed to sell some of their land to the state for the construction of part of I-70. Because I-70 would sever Rooney Road, a grade separation was originally planned in order that it would continue as a through roadway in its same location. However, until that could be accomplished, Rooney Road was to be temporarily rerouted over plaintiffs' property.
The original construction plans were changed, and it was determined to relocate Rooney Road permanently. In late 1967, the county undertook to acquire a permanent right-of-way for the desired relocation. On January 17, 1968, Mrs. Hayden granted the state a temporary easement in order to detour Rooney Road, such easement to expire upon either the completion of the construction of I-70 or January 17, 1969, whichever first occurred. Plaintiffs indicated a willingness to grant a permanent right-of-way for the relocated Rooney Road, conditioned, however, upon the county's commitment to build a proposed extension of West Alameda Avenue to I-70. The relocation of Rooney Road was completed by December 31, 1968, but the West Alameda extension was never built.
On December 16, 1975, the trial court found that a taking had occurred, established December 15, 1975, as the date of taking, and set the matter over for a board *833 of commissioners' hearing on the value of the property taken. See § 38-1-101, C.R.S.1973. At the valuation hearing, plaintiffs' appraiser estimated that the value of the 17 acres taken was approximately $144,500 and that the residual damages to a 2.65 acre parcel of plaintiffs' land located between Rooney Road and I-70 amounted to $18,500. Defendant's appraiser estimated that the value of the property taken was approximately $75,900, and that there was no residual damage.
The court adopted the board of commissioners' findings that the value of the property taken was $115,616 and that the residual damage to the 2.65 parcel of land was $5,500, denied plaintiffs' motion for attorneys' fees, and entered judgment accordingly.

I. FAILURE TO JOIN COUNTY TREASURER
In his reply brief, defendant contends for the first time in this case that the trial court had no jurisdiction over the subject matter because plaintiffs did not join the county treasurer and the treasurer is an indispensable party. See § 39-3-111, C.R.S.1973. We find no merit in this contention.
We hold that a landowner is not required under § 39-3-111, C.R.S.1973, to join the county treasurer in an inverse condemnation action. Section 39-3-111, C.R.S.1973, must be read in conjunction with the eminent domain statute, § 38-1-101, et seq., C.R.S.1973. Under the eminent domain statute, the condemning authority, rather than the landowner, initiates the action. Implicitly, then, § 39-3-111, C.R.S.1973, places the burden of joining the county treasurer on the tax exempt condemning authority. Hence, the Board has the burden, if one exists under the facts of this case, of joining the treasurer, and it cannot now seek dismissal because plaintiffs did not do so.

II. WAIVER, ESTOPPEL, AND DEDICATION
Urging that since plaintiffs gave assurances that a permanent right-of-way to Rooney Road would be forthcoming, since they never requested compensation, and since they allowed defendant to expend considerable sums of money in constructing the road, the county contends that the court erred in not finding that plaintiffs either impliedly dedicated the land to public use or should now be estopped from seeking compensation. We find no error in the court's rulings.
Assuming arguendo that these defenses may be available to the county, the evidence supports the trial court's resolution of the issues and its rulings thereon will not be disturbed on review. Gleason v. Phillips, 172 Colo. 66, 470 P.2d 46. Two basic unrebutted facts alone defeat the county's contentions: The granting of the temporary fixed term easement, and plaintiffs' consistent refusal to grant a permanent right-of-way until there was a commitment on the West Alameda extension project. These facts are inconsistent with a waiver and do not constitute an express or implied intent to dedicate. See Englewood v. Denver, 123 Colo. 290, 229 P.2d 667. Furthermore, since plaintiffs established a condition precedent for the dedication of their property without compensation, and that condition failed, it cannot be said that their actions constituted either a dedication of the property or a waiver of right to just compensation.

III. NOTICE OF CLAIMS PROVISION
The county argues that plaintiffs are barred from bringing this action because they failed to comply with the 90-day notice of claims provision, § 24-10-109, C.R.S.1973. We disagree.
The requirement that a notice of claims be given to public entities is a condition precedent to any action brought under the Colorado Governmental Immunity Act, § 24-10-101, et seq., C.R.S.1973. See § 24-10-109(1), C.R.S.1973. However, an inverse condemnation action is based on Colo.Const. Art. II, Sec. 15, and is to be treated as an eminent domain proceeding, conducted strictly according to the procedures set out in the eminent domain statute, *834 § 38-1-101, et seq., C.R.S.1973. Ossman v. Mountain States Telephone & Telegraph Co., 184 Colo. 360, 520 P.2d 738. Since an inverse condemnation action does not arise under § 24-10-101, et seq., C.R.S.1973, and the eminent domain statute does not require notice as a condition precedent to maintaining an action thereunder, the notice of claims provision, § 24-10-109, C.R.S.1973, does not apply to an inverse condemnation action.

IV. STATUTE OF LIMITATIONS
The county also asserts that the six-year limitations period applicable to trespass actions, § 13-80-110, C.R.S.1973, applies also to inverse condemnation proceedings, and that, since the state entered upon plaintiffs' property in February 1968 to begin constructing Rooney Road, this action is barred. Again, we disagree.
Although the state entered upon plaintiffs' property in February 1968, they did so under a claim of right, i. e., the temporary easement. Also, since plaintiffs' intent under the temporary easement was to permit the state to be on lands necessary for the construction of Rooney Road, the state's deviation in its construction of Rooney Road from the description of land set forth in the temporary easement is not dispositive of when its wrongful conduct occurred. Consequently, the earliest date upon which this action could have been maintained was January 17, 1969, when the easement expired, and the intent to appropriate this property became clear. See 2 J. Sackman, Nichols' Law of Eminent Domain 6.1[2] (rev'd 3d ed. 1976).
Plaintiffs assert that the only time limitation applicable is the 18-year provision concerning acquisition of title by prescription or adverse possession, § 38-41-101, C.R.S.1973. However, we need not determine which time limitation is applicable, since the action was timely filed, even under the six-year limitation period.

V. VALUATION DATE
The county also argues that the trial court erred in establishing December 15, 1975, as the valuation date. It contends that the eminent domain statute determining the valuation date, § 38-1-114, C.R.S.1973, does not apply to inverse condemnation proceedings, but that, even if it does apply, the appropriate valuation date should have been January 17, 1968, the date the state was granted the temporary easement.
For reasons expressed in part III above, we reject defendant's contention that the eminent domain statute is inapplicable. See also Feder & Wieland, Inverse Condemnation  a Viable Alternative, 51 Den.L.J. 529. And, under that statute, § 38-1-114,C.R.S.1973, provides that the amount of compensation "shall be determined as of the date the petitioner is authorized by agreement . . . to take possession or the date of trial or hearing to assess compensation, whichever is earlier." Thus, since this action concerns a permanent, as opposed to a temporary taking of property, the trial court correctly ignored the January 17, 1968, agreement, and established the valuation date as the date of trial.

VI. VALUATION AND DAMAGES
The county asserts that the board of commissioners' valuation of the subject property is excessive because it is based upon incompetent evidence. It claims that testimonyconcerning comparable sales, a purported purchase agreement, the most advantageous use of the subject property, and the method by which plaintiffs' appraiser estimated the property's value was improper.
Where competent evidence in the record fixes the value both higher and lower than that awarded, the judgment cannot be overturned on the ground that it is excessive. Denver v. Minshall, 109 Colo. 31, 121 P.2d 667. The county did not object to any of the testimony concerning valuation except as to the purported purchase agreement. Therefore, only the purchase agreement issue was properly preserved for appellate review. Goldstein v. Denver Urban Renewal Authority, Colo., 560 P.2d 80.
*835 Even so, the determination of what properties are sufficiently similar so as to be used in fixing the value of condemned property lies largely within the board of commissioners' discretion. Cf. Board of County Commissioners v. Vail Associates, Ltd., 171 Colo. 381, 468 P.2d 842. We find no abuse of that discretion. Therefore there was no error in the board's reliance on the comparable sales testified to by plaintiffs' appraiser.
Though there might have been error in receiving evidence of the purported purchase agreement, any error in its admission was harmless in view of the other testimony on valuation. Since it is presumed that the board of commissioners based its determination upon the competent evidence, Goldstein, supra, the board's valuation is affirmed.
The county claims that the award of residual damages was unfounded because plaintiffs' potential use of that land remains unchanged. We find no merit in this contention because there is evidence that the construction of I70 and the new Rooney Road isolated the 2.65 acre parcel in question from the rest of plaintiffs' property and has affected its use.

VII. ATTORNEYS' FEES
Plaintiffs assert, by way of cross-appeal, that they are entitled to reasonable attorneys' fees under § 24-56-116, C.R.S.1973.
We must first address, however, defendant's contention that this court lacks jurisdiction to consider this issue because plaintiffs did not file their motion to alter or amend judgment within 10 days after entry of judgment. We do not agree with defendant's contention.
Several months after the final hearing on the merits, the court conducted a hearing for the determination of costs, interest, appraisal fees and attorneys' fees. The facts upon which plaintiffs based their entitlement to attorneys' fees had been established by undisputed evidence at the prior hearing. The denial of the claim was based on the court's interpretation of § 24-56-116, C.R.S.1973. Therefore, because there were no controverted issues of fact, and the issue was one of law, a motion to alter or amend was not necessary to preserve plaintiffs' right of appeal. C.R.C.P. 59(h) Rowe v. Watered Down Farms, Colo., 576 P.2d 172 (1978). Cf. Denver Ass'n for Retarded Children, Inc. v. School District No. 1, 188 Colo. 310, 535 P.2d 200.
Turning to the merit of plaintiffs' cross-appeal, we note that § 24-56-116, C.R.S.1973 provides:
"Where an inverse condemnation proceeding is instituted by the owner of any right, title, or interest in real property because of the alleged taking of his property for any program or project for which federal financial assistance will be available to pay all or any part of the cost of the program or project, the court rendering a judgment for the plaintiff in such proceeding and awarding compensation for the taking of property . . . shall determine and award . . . to such plaintiff . . . reasonable attorney . . . fees actually incurred because of such proceeding."
It is undisputed that only county money was used in the relocation of Rooney Road and that Federal money was used in the overpass construction. The question thus is whether the relocation of Rooney Road was part of an overall "program or project" for which federal financial assistance was available. From the outset, it was planned as part of the I-70 project, to utilize federal funds to construct an overpass so that the old Rooney Road would remain continuous. Therefore, maintaining Rooney Road as a through roadway was part of the "program or project" and part of the cost of relocating Rooney Road, specifically the overpass, was paid with federal funds. The shifting of the sites of the originally planned overpass and connecting roadways did not change the character of the federally funded project which included, from the start, plans to make Rooney Road continuous. Thus, under these facts and the provisions of § 24-56-116, C.R.S.1973, the attorneys' fees of $40,372, which the trial court found to be reasonable, should have been awarded.
*836 The judgment against the county is affirmed except as to that part denying plaintiffs' attorneys' fees, which is reversed, and the cause is remanded with directions to enter judgment for plaintiffs' attorneys' fees in the amount of $40,372, with statutory interest on that amount from the date judgment is entered by the trial court.
COYTE and PIERCE, JJ., concur.