**FLATIRON PAVING CO. OF BOULDER, a Colorado corporation, Plaintiff–Appellee,**

**v.**

**GREAT SOUTHWEST FIRE INSURANCE COMPANY, an Arizona corporation, Defendant–Appellant.**

No. 89CA1152.

Colorado Court of Appeals, Div. V.

Oct. 25, 1990.

Rehearing Denied Dec. 6, 1990.

Certiorari Denied June 17, 1991.

Hutchinson, Black, Hill & Cook, James M. England, Boulder, for plaintiff-appellee.

Walberg, Dagner & Lloyd, P.C., Wendelyn K. Walberg, Englewood, for defendant-appellant.

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

Opinion by JUDGE VAN CISE.\*

Defendant, Great Southwest Fire Insurance Company (Southwest), appeals a summary judgment entered against it and in favor of plaintiff, Flatiron Paving Co. of Boulder (Flatiron). We affirm.

In early 1983, Flatiron hired Whitlock House Moving, Inc., (Whitlock) to move a state historical monument as part of Flatiron's highway paving contract with the State. In April, during the final stages of excavating under the base of the monument, it collapsed and had to be rebuilt by Flatiron at a cost of approximately $26,000. At the time of the collapse, Whitlock was the insured in a contractor's liability policy with Southwest.

On April 28, Whitlock notified Southwest that the monument had been damaged. On May 2, Southwest wrote Whitlock, acknowledging it had received notice of the loss, and stating that Southwest "will not be able to help you with this claim" on the basis that:

> "This insurance does not apply ... to property damage to ... property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control...."

On October 4, Flatiron furnished Southwest with the rebuilding costs and advised it would sue if not reimbursed within ten days. A similar letter was sent to Whitlock on the 19th with a copy to Southwest. On November 10, Flatiron filed its complaint against Whitlock.

In November 1984, a default judgment was entered in favor of Flatiron against Whitlock in the amount of $26,365.66, plus interest, costs, and attorney fees. Whitlock then assigned to Flatiron all rights under its liability policy, in exchange for Flatiron's agreement not to execute against Whitlock on its judgment. About eleven months later, Flatiron informed Southwest of the judgment and of assignment of Whitlock's claims. In December 1985, Southwest wrote Flatiron, denying

and § 24-51-1105, C.R.S. (1988 Repl.Vol. 10B).

policy coverage and referring to the policy exclusion for damage to property in the insured's "care, custody or control."

On May 14, 1987, Flatiron commenced this action seeking recovery from Southwest for the property damage caused by Whitlock. Its claims were based on (1) Whitlock's assignment of its rights under the policy (including the right to recover from Southwest for the alleged breach of its contractual obligation to indemnify its insured), (2) Flatiron's status as an intended third-party beneficiary of the insurance contract, and (3) Southwest's allegedly negligent misrepresentations to Flatiron concerning the nature of Whitlock's coverage.

Prior to trial, the court denied Southwest's motion for summary judgment in which Southwest asserted that Flatiron's first two claims were barred by applicable statutes of limitations. The court granted Flatiron's motion for summary judgment on its first two claims on the grounds (1) that Southwest was bound by the prior judgment obtained by Flatiron against its insured, Whitlock, following Southwest's refusal to defend and (2) that Southwest's policy provided coverage for the factual claims underlying that judgment as a matter of law.

On Flatiron's motion, the third claim was dismissed, with leave to be reinstated in the event of remand after appeal. Judgment was then entered in Flatiron's favor on the first two claims. This appeal followed.

## I.

■ Southwest initially contends that Flatiron failed to file its claims within the three-year period specified in § 13–80–107, C.R.S. (revised and recodified at § 13–80–101(1)(a), C.R.S. (1987 Repl.Vol. 6A)) and that, therefore, the claims should be dismissed. Flatiron asserts that the action is governed by the provisions of the six-year statute, § 13–80–110, C.R.S.; cf. § 13–80–103.5, C.R.S. (1987 Repl.Vol. 6A), and was, therefore, filed in time. We conclude the claim was timely filed.

Generally, before a statute of limitations begins to run, there must be some damage which would entitle a plaintiff to maintain a cause of action. *Doyle v. Linn,* 37 Colo. App. 214, 547 P.2d 257 (1975). The procedure to be utilized in determining when a cause of action accrues is to ascertain when litigation could first have been successfully maintained. *Tucker v. Claimants in re Death of Gonzales,* 37 Colo.App. 252, 546 P.2d 1271 (1975).

Here, Flatiron proceeded against Southwest as assignee of its insured, seeking to recover damages for Southwest's breach of its contractual obligation to indemnify Whitlock for property damage cause by Whitlock. Although at the time Flatiron brought suit against Whitlock, Whitlock might have sued Southwest for its failure to defend, that claim is not involved here. Under the statute in existence at the time, Whitlock would have had no basis for suing Southwest for failure to indemnify until Whitlock had incurred damages.

The judgment against Whitlock is dated November 19, 1984. It was not until then that the insured or its assignee could have brought a failure to indemnify action against Southwest. As third-party beneficiary, Flatiron had not sustained any damages until it had obtained a judgment against Whitlock from whom it was unable to collect.

Flatiron's action against Southwest was commenced May 14, 1987, well within the three-year period following the accrual of its claims. Therefore, whether the three-year or a longer period statute applies, this action was not time barred.

■ *Nelson, Haley, Patterson & Quirk, Inc. v. Garney Cos.,* 781 P.2d 153 (Colo. App.1989), is inapposite. In that case, this court construed the special statute of limitation applicable only to actions against certain classes of persons listed in the statute who are engaged in construction of improvements to real property. Colo.Sess. Laws 1979, ch. 144, § 13–80–127 at 631 (now codified, with additional amendments, as § 13–80–104, C.R.S. (1987 Repl.Vol. 6A)). It does not specifically refer to movers. Furthermore, Whitlock's efforts in moving the monument would not constitute an improvement to real property. *See Stanske v. Wazee Electric Co.,* 722 P.2d 402 (Colo.

1986); *Calvaresi v. National Development Co.*, 772 P.2d 640 (Colo.App.1988); *Black's Law Dictionary* 682 (5th ed.1979).

## II.

Southwest also contends that it did not receive timely notice of the pendency of the underlying action and that, therefore, it should have been allowed to litigate Whitlock's negligence and the reasonableness of the damages claimed. We disagree.

■ Southwest was notified by Whitlock ten days after the collapse, and four days later denied coverage. Before the action was filed by Flatiron against Whitlock, Southwest was advised that, absent reimbursement, a lawsuit would be filed. Relying on its interpretation of the policy, it did nothing. Therefore, as stated in *Colard v. American Family Mutual Insurance Co.*, 709 P.2d 11 (Colo.App.1985), Southwest "waived its right to assert failure to timely forward suit papers as a defense because it denied liability on the basis of coverage only and did not assert the notice defense until judgment was entered against its insured and this ... action was instituted."

In denying coverage under the policy, Southwest took the risk that its interpretation of the policy could be erroneous and that it would ultimately be found liable under the policy. Absent fraud or collusion, by refusing coverage, Southwest waived its right to contest the liability of Whitlock with respect to the matters on which it was sued and the amount of Flatiron's damages.

## III.

■ Southwest further contends that coverage for the damage to the monument is excluded by the "care, custody, or control" or the "collapse hazard" exclusions stated in the policy. Flatiron argues that this exclusion does not apply if, as here, the work was in progress and there was a warranty that the work would be done in a workmanlike manner. We agree with Flatiron.

The policy provides in pertinent part:

"This insurance does not apply:

"(a) to liability assumed by the insured under any contract or agreement, except an incidental contract; but with respect to bodily injury or property damage occurring while work performed by the named insured is in progress, this exclusion does not apply to a warranty that such work will be done in a workmanlike manner; ...

"(k) to property damage to ...

"(3) property in the care, custody or control of the insured, or as to which the insured is for any purpose exercising physical control; ...

"(r) to property damage included within:

"(2) the collapse hazard in connection with the operation identified in this policy by a classification code number which includes the symbol c...."

Inasmuch as the contract between Flatiron and Whitlock specified that Whitlock would perform work for Flatiron in a "proper, efficient, and workmanlike manner," it is undisputed that Whitlock extended a warranty of workmanlike performance.

The above-quoted policy provision (a), applicable here, eliminates the exclusion for property damage resulting from Whitlock's work in progress that was warranted to be done in a workmanlike manner. However, provisions (k)(3), and (r)(2) pertaining to "care, custody or control" and the "collapse hazard," equally applicable here, call for exclusions of coverage. Therefore, the exclusion provisions are ambiguous. *See Colard v. American Family Mutual Insurance Co., supra; Worsham Construction Co. v. Reliance Insurance Co.*, 687 P.2d 988 (Colo.App.1984). And, any ambiguity in the exclusionary clauses of an insurance contract must be construed in favor of the insured. *Colard v. American Family Mutual Insurance Co., supra.*

So construed, the policy affords coverage for work product damage caused by Whitlock's negligent workmanship.

Judgment affirmed.

CRISWELL and REED, JJ., concur.