Kathleen F. CONNERS,
Plaintiff–Appellant,

v.

CITY OF COLORADO SPRINGS,
Defendant–Appellee.

No. 96CA0885.

Colorado Court of Appeals,
Div. II.

Dec. 11, 1997.

Rehearing Denied Feb. 5, 1998.

Certiorari Granted Sept. 8, 1998.

John L. Maska, Colorado Springs, for Plaintiff–Appellant.

James G. Colvin, II, City Attorney, Stacy L. Rouse, Senior Litigation Attorney, Colorado Springs, for Defendant–Appellee.

Opinion by Judge CRISWELL.

This appeal by plaintiff, Kathleen F. Conners, from the judgment dismissing her complaint against defendant, City of Colorado Springs, presents the primary issue whether a claim by a public employee against a municipality under the Colorado Civil Rights Act (CRA), § 24–34–301, et seq., C.R.S.1997, is subject to the notice provisions of the Colorado Governmental Immunity Act (GIA),

§ 24–10–101, et seq., C.R.S.1997. Because we conclude that the GIA does not apply to a civil rights claim under the CRA, we reverse the dismissal of the claim based upon the CRA and remand that claim for further proceedings. We affirm the dismissal of the common law claims asserted by plaintiff.

Plaintiff's complaint alleged that she had been employed by the City for nearly three years before she was terminated. She alleged that, until the immediate events giving rise to her claims, she had been ranked as a superior employee. She asserted, however, that, shortly after she complained about her supervisor's use of vulgar and sexually suggestive language, she received an unsatisfactory rating. According to the complaint, about two months later, she was terminated from her position with the City, purportedly for lack of work, but another person was hired to take the position from which she had been discharged. Finally, she asserted that she had exhausted the administrative remedies available to her under the CRA.

Based upon these factual allegations, plaintiff contended that she had been required to endure a hostile environment because of her gender, that she was discharged because of her legitimate complaints about that environment, and that the City's actions in these respects constituted "unfair employment practices" under the CRA.

Later, plaintiff moved to amend her complaint to add common law claims based upon invasion of privacy and extreme and outrageous conduct. Her motion asserted that she had given timely notice to the City of these claims pursuant to the GIA.

The City moved to dismiss plaintiff's complaint on jurisdictional grounds. It asserted that the GIA applied to all of the claims asserted by plaintiff, but that no notice under that act of any of those claims had been given until July 1994, although her discharge occurred in February 1993. Hence, it asserted that the notice was untimely under the GIA, § 24–10–109, C.R.S.1997, which requires that such notice be given within 180 days after a plaintiff's discovery of an injury.

In response, plaintiff argued that any notice requirement of the GIA was satisfied by her service of the charges under the CRA on the City. In addition, plaintiff sought to amend her complaint to assert a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994).

The court rejected plaintiff's motion to amend to assert a Title VII claim as untimely. In addition, it concluded that, because plaintiff had failed to provide a timely notice to the City pursuant to the GIA, it lacked jurisdiction over any of the claims asserted. Consequently, it entered judgment dismissing all of those claims, and it is from that judgment that plaintiff appeals.

## I.

Plaintiff asserts that the court erred in dismissing the claim asserted by her under the CRA on the ground that she had failed to comply with the notice provisions of the GIA. We agree.

Section 24–10–108, C.R.S.1997, of the GIA provides that:

> Except as provided in sections 24–10–104 to 24–10–106, sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort.... (emphasis supplied)

Section 24–10–106(1), C.R.S.1997, describes some six circumstances in which sovereign immunity is waived. It provides that, except to the extent that an injury arises out of one of those circumstances, no claims "which lie in tort or could lie in tort" can be asserted against the state or any political subdivision.

Sections 24–10–109(1) and 24–10–109(2), C.R.S.1997, require that a claimant provide written notice to the public entity within 180 days of the discovery of the injury. And, § 24–10–109(1), C.R.S.1997, specifically provides that:

> Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action. (emphasis supplied)

Hence, the GIA, on its face, appears to preclude any claim that "lies in tort or could

lie in tort" from being pursued against a public entity unless such claim is within certain specified exceptions, and even then, certain procedural steps must be followed for the claim to be viable.

However, other constitutional and statutory provisions, some adopted before and some adopted after the initial enactment of the GIA in 1971, *see* Colo. Sess. Laws 1971, ch. 323 at 1204, et seq., also authorize legal actions against either the state or one or more political subdivisions for injuries sustained under circumstances *not* described in § 24–10–106(1) of the GIA.

The most notable other instance in which the state has authorized a suit for damages is that in which private property is taken or damaged by the state or a political subdivision and compensation is required to be paid under Colo. Const. art. II, § 15. Even if the governmental entity does not itself commence an eminent domain proceeding, the private property owner has the right to institute an "inverse condemnation" proceeding under the eminent domain statute. *Hayutin v. Colorado State Department of Highways,* 175 Colo. 83, 485 P.2d 896 (1971), *cert. denied,* 404 U.S. 991, 92 S.Ct. 533, 30 L.Ed.2d 542 (1971).

There are, in addition, several other instances in which the state has authorized a suit for damages under circumstances that do not fall within the provisions of the GIA. The following are some examples:

A public employee may recover damages from any political subdivision of the state that attempts to prohibit that employee from providing non-confidential, non-privileged information to a committee of the General Assembly or to a court of law. Section 8–2.5–101(1)(b), C.R.S.1997.

An employee of a political subdivision that operates a mass transportation system may recover damages in a civil action resulting from that entity's commission of an "unfair labor practice" under the Colorado Labor Peace Act. *See* §§ 8–3–104(12), 8–3–108(1), and 8–3–121, C.R.S.1997.

Several statutes authorize recovery for damage to property resulting from various governmental functions not referred to in the GIA. *See* § 24–32–2111, C.R.S.1997 (damages resulting from negligent action or action in willful disregard of rights in combating grasshopper infestation); § 31–25–406, C.R.S.1997 (damages resulting from establishment of pedestrian mall); § 33–3–104, C.R.S.1997 (damages caused by wildlife under specified circumstances); and § 37–24–105, C.R.S.1997 (damages resulting from the construction or operation of a drainage district).

In addition, § 24–32–2303, C.R.S.1997, specifically authorizes a suit against the state for property damage, personal injury, or wrongful death sustained by a civil defense worker, and § 24–50.5–104, C.R.S.1997, authorizes a suit by an employee of the state if that employee is retaliated against for providing non-confidential information respecting a state agency.

Finally, the CRA specifically authorizes a civil action by an employee against the state or any political subdivision based upon a refusal to hire, a discharge, a promotion or demotion, or other action that discriminates against that employee in matters of compensation because of that employee's disability, race, creed, color, sex, age, national origin, or ancestry. *See* §§ 24–34–402 and 24–34–306(11), C.R.S.1997. A similar action may be instituted by an employee who has been terminated from employment for engaging in a lawful activity off the premises of the employer during nonworking hours. Section 24–34–402.5, C.R.S.1997.

Whenever a legal action is brought pursuant to any of these other statutes, a determination must be made as to whether the GIA applies to that action.

The initial inquiry is whether the statutory action lies in "tort" or could lie in tort. If so, it may also be necessary to consider whether the substantive restrictions of §§ 24–10–105, 24–10–106, and 24–10–108 of the GIA apply to such a statutory action, and whether it is to be considered one "brought under the provisions" of the GIA for purposes of the notice provisions of § 24–10–109.

In two early decisions, both the supreme court and a division of this court concluded that an action brought pursuant to another

statute was not an action brought under the GIA, so that the § 24–10–109 notice requirement was inapplicable to such an action.

In *Antonopoulos v. Town of Telluride,* 187 Colo. 392, 532 P.2d 346 (1975), plaintiff sued two town marshals, based on common law negligence. In addition, he asserted two claims against the town, one based on the common law doctrine of *respondeat superior* and one based on the statute that is now § 29–5–111, C.R.S.1997, requiring a municipality to indemnify its peace officers. The supreme court held that the GIA's notice requirements were applicable only to the common law claims against the town based on *respondeat superior.* It held that sovereign or governmental immunity had never barred an action against a peace officer, even before the adoption of the GIA, and therefore, "the legislature's enactment of the [GIA] was without effect on a peace officer's vulnerability to liability." In addition, it concluded that the GIA's notice requirements were "extraneous" to the town's statutory liability because "the notice requirement [applies] only to actions brought under the provisions of the [GIA]," not to actions brought under other statutes. *Antonopoulos v. Telluride, supra,* 187 Colo. at 397, 532 P.2d at 349.

Likewise, in *Hayden v. Board of County Commissioners of Jefferson County,* 41 Colo. App. 102, 106, 580 P.2d 830, 834 (1978), a division of this court determined that an inverse condemnation action was not subject to the GIA's procedural requirements because "an inverse condemnation action does not arise under [the GIA], and the eminent domain statute does not require notice as a condition precedent to maintain an action thereunder...."

Both *Antonopoulos* and *Hayden* are based upon the conclusion, only partially expressed in either opinion, that a claim arising under another statute is not an action in tort, within the meaning of the GIA, and that such an action, in any event, is not one that is "brought under the provisions" of the GIA. Hence, the notice and other requirements of § 24–10–109 are inapplicable to such actions.

At least some support for these broad propositions can be found by comparing the language of § 24–10–106 (applicable to actions against public entities) with that of § 24–10–118, C.R.S.1997, which authorizes actions against public employees. The latter statute provides that its procedural requirements are to be applied to:

> *any* action against a public employee, *whether* brought pursuant to this section, section 29–5–111, C.R.S., the common law, *or otherwise,* which lies in tort or could lie in tort.... (emphasis supplied)

If the more limited language of § 24–10–106 were intended to convey the same broad concept, there is no reason for the General Assembly's use of far more expansive terms in § 24–10–118.

On the other hand, more recent opinions by the appellate courts have not applied the same analysis as is contained in *Antonopoulos* and *Hayden. See, e.g., State Personnel Board v. Lloyd,* 752 P.2d 559 (Colo.1988) (action for damages under whistle-blower act subject to notice requirement of GIA).

However, in addition to claims having a statutory basis, there are also other noncontractual actions against political entities that are not considered to be tort actions. Hence, an action in the nature of certiorari is not a tort action for purposes of the GIA. *Sherman v. Colorado Springs Planning Commission,* 763 P.2d 292 (Colo.1988). Nor is an action in mandamus, *Jones v. Northeast Durango Water District,* 622 P.2d 92 (Colo. App.1980), even though, in the latter action a monetary award might be entered. *See Sherman v. Colorado Springs Planning commission, supra* (Erickson, J., dissenting). And, the notice provisions of § 24–10–109 have never been applied to inverse condemnation actions. *See, e.g., Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993).

Further, there is reason to conclude that the General Assembly did not intend that an action against a public entity was to be considered a tort action, unless the action was one to obtain monetary damages.

As § 24–10–102, C.R.S.1997, of the GIA makes clear, the General Assembly's concern in partially restoring the doctrines of sovereign and governmental immunities, which

had previously been judicially abolished, *see Evans v. Board of County Commissioners of El Paso County,* 174 Colo. 97, 482 P.2d 968 (1971), was that the complete abolition of those doctrines would lead to "unlimited liability" of public entities resulting in financial consequences that could interfere with and disrupt their ability to provide essential public services.

*State Department of Highways v. Mountain States Telephone & Telegraph Co.,* 869 P.2d 1289 (Colo.1994) is suggestive of this conclusion. There, the court determined that the excavation statute, § 9–1.5–101, C.R.S.1997, did not give rise to a private cause of action for damages based on a violation of its terms. However, citing *Board of Education of Granite School District v. Salt Lake County,* 659 P.2d 1030 (Utah 1983), it noted that an action to *enjoin* a violation of its terms would not be subject to the GIA, because sovereign immunity is not a defense to an equitable claim. *But see Arabasz v. Schwartzberg,* 943 P.2d 463 (Colo.App.1996) (without referring to *State Department of Highways, supra,* division concluded that GIA applies to common law claim for estoppel, based on representations made by governmental entity).

The above considerations lead us to conclude that the claim asserted by plaintiff here is not a claim that lies in tort or could lie in tort, within the meaning of the GIA; it is, rather, a claim arising solely under a statute granting an employee the right to obtain limited equitable relief. Hence, it is not subject to the notice provisions of the GIA.

The CRA provides that, if an employee concludes that his or her employer has violated that statute's terms, a written charge may be filed with the Colorado Civil Rights Commission within six months from the date of an alleged discriminatory act. Section 24–34–403, C.R.S.1997. Upon receipt of the charge, the director of the civil rights division must investigate its allegations to determine whether probable cause exists for crediting them. Section 24–34–306(2)(b), C.R.S. 1997.

If probable cause is present, and if mediation of the dispute fails, the Commission may issue a formal complaint and set the cause for hearing pursuant to the Administrative Procedure Act. Sections 24–34–306(4) through 24–34–306(8), C.R.S.1997. At the completion of that hearing, and based upon the findings and conclusions of the administrative law judge, the Commission may either dismiss the complaint or enter an order directing the employer to cease and desist from discriminating actions and to take such further affirmative action, including hiring or reinstatement of the employee and payment of back pay, as the Commission deems appropriate. Sections 24–34–306(9) and 24–34–405, C.R.S.1997.

If the director determines that probable cause to credit the allegations of the charge does not exist, the charge will be dismissed and the employee will be advised that he or she has the right to commence a civil action in the courts of this state either without or after appealing the order of dismissal to the Commission. Section 24–34–306(2)(b), C.R.S. 1997. In such civil action, the employee may seek from the court only the relief that the Commission could have provided. Section 24–34–306(10), C.R.S.1997.

In *Brooke v. Restaurant Services, Inc.,* 906 P.2d 66 (Colo.1995), the court stated that the CRA's primary purpose was to eradicate discrimination by employers within this state. Hence, providing remedies for individual employees under the CRA is merely secondary and incidental to this underlying primary purpose. Further, the CRA does not require an award of back pay to an aggrieved employee, and it does not authorize an award of any other type of damages that would be recoverable in a common law tort action. The court concluded, therefore, that the CRA did not supersede the common law rights of action that an employee might possess; an independent common law action for the tortious interference with the contract of employment, based upon the employee's gender, will lie to recover all damages that the common law might authorize, including back pay, front pay, and emotional distress. The CRA does not supplant this common law tort action.

Earlier, in *Continental Title Co. v. District Court,* 645 P.2d 1310 (Colo.1982), the su-

preme court, comparing the CRA with provisions of Title VII, noted that the award of some monetary relief is not necessarily "legal relief" and that, because the award of back pay under the CRA is entirely discretionary, such an award is merely incidental to the equitable relief obtainable; it does not constitute legal relief entitling an employee to a jury trial.

We are aware that, since the *Continental Title Co.* decision, § 24–34–405, C.R.S.1997, has been amended so as to allow the award of any of the various types of relief described in that statute "singly or in any combination." *See* Colo. Sess. Laws 1989, ch. 207 at 1042. However, the City here conceded in the trial court that plaintiff's remedies under the CRA are still limited to those set forth in the CRA and that the award of back pay is still discretionary.

The action here, then, is one that is specifically authorized by a statute whose primary purpose is to effectuate an important public policy, rather than to provide judicial relief to an individual. In addition, that statute contains its own requirements for notice to a local public employer and authorizes an action by a public employee only after the exhaustion of specified administrative procedures. Finally, the relief that the statute authorizes an employee to seek is limited; while such relief may include an award of back pay, such an award is not intended to compensate the employee fully, and whether even such limited relief is granted is wholly discretionary with the court. Given all of these circumstances, we conclude that an action under the CRA is not an action that "lies in tort or could lie in tort" within the meaning of the GIA.

Neither *State Personnel Board v. Lloyd,* *supra,* nor *Bauman v. Colorado Department of Health,* 857 P.2d 499 (Colo.App.1993), requires a different conclusion.

While the so-called "whistle-blower" statute at issue in *Lloyd,* § 24–50.5–103, has some facial similarities to the CRA, that statute provides that "the employee may recover *damages,* together with court costs, and the court may order such other relief as it deems appropriate." (emphasis supplied) Hence, that statute, unlike the CRA, authorizes the recovery of legal damages, not merely limited equitable relief. To the extent that the GIA was intended to be applied to claims brought under other statutes, a claim under the whistle-blower statute is a tort claim.

Similarly, in *Bauman,* neither of the parties argued that the GIA did *not* apply to a claim asserted under the CRA. Rather, both assumed that such was the case, and as the opinion specifically notes, the only contention made by the plaintiff there was that there had been substantial compliance with the GIA's notice requirements. The issue considered here was not addressed in *Bauman.*

## II.

Plaintiff concedes that the GIA applies to a common law tort claim. Hence, her claims for invasion of privacy and outrageous conduct, asserted in her first amended complaint, were properly dismissed, and plaintiff does not contend to the contrary.

Plaintiff's initial complaint contains three claims. One claim asserts that the City created a hostile environment in plaintiff's workplace, and a second alleges that she was discharged in retaliation for complaining about that environment. The third claim asserts that both these actions were violative of the CRA.

To the extent that the first two claims asserted independent, common law claims, not arising out of or subject to the CRA, *see Brooke v. Restaurant Services, Inc., supra,* those claims were also subject to the GIA, and their dismissal was proper.

However, plaintiff's third claim clearly asserted a claim based upon the City's alleged violation of the CRA. It was error to dismiss that claim.

## III.

The trial court denied plaintiff's request to amend her complaint to assert a Title VII claim, to which the GIA is not applicable, *Norton v. Gilman,* 949 P.2d 565 (Colo.1997), based upon that request's lack of timeliness and the imminence of trial. Given our conclusion that the cause must be remanded to that court, it should reconsider plaintiff's mo-

tion to amend in light of present circumstances.

The judgment dismissing all of the claims asserted by plaintiff is affirmed, except to the extent that she asserts a claim under the CRA, and to that extent the judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views set forth in this opinion.

MARQUEZ and TAUBMAN, JJ., concur.