FILED
United States Court of Appeals
Tenth Circuit

November 21, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

STEVE MCINTYRE;
KIMBERLY MCINTYRE,

      Plaintiffs-Appellants,

v.

BOARD OF COUNTY
COMMISSIONERS OF THE
COUNTY OF GUNNISON,
COLORADO,

      Defendant-Appellee.

No. 07-1181
(D.C. No. 06-cv-401-REB-PAC)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

Steve and Kimberly McIntyre appeal from the district court's order

dismissing their claims against defendant Board of County Commissioners of the

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

County of Gunnison, Colorado (the County). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Background

This case arises out of a dispute over title to a trail in Gunnison County, a portion of which crossed the McIntyres' property. In 1998, the McIntyres erected a gate in an attempt to block public access to the trail. The County believed that the trail was a public trail and instituted a quiet-title action in state court to establish the public's right to use the trail.

### A. The State Proceedings

After filing its quiet-title complaint in state court, the County obtained a temporary restraining order on June 26, 1998, which prohibited the McIntyres from excluding the public from using the trail. The temporary restraining order was replaced by a preliminary injunction in June 1999. In December of that year, the McIntyres filed an answer to the County's complaint and asserted several counterclaims, including a claim for inverse condemnation. In March 2000, the state court quieted title in favor of the County and made the injunction permanent. An amended final decree was entered on February 12, 2002. The McIntyres appealed, and the Colorado Court of Appeals affirmed. In March 2004, the Colorado Supreme Court reversed the judgment and remanded the case back to the state district court.

On May 3, 2004, the state district court held a hearing to discuss the status of the case. The parties agreed to a bifurcated disposition of the County's quiet-title claim and the McIntyres' inverse condemnation counterclaim. The quiet-title claim was to be set for trial and then, if necessary, the counterclaim would be tried after the quiet title claim was resolved. The court also left in place the injunction that had been instituted earlier in the case pending further briefing by the parties. On May 8, the McIntyres filed a motion requesting permission to withdraw their counterclaim for inverse condemnation. On June 17, the court entered an order granting the McIntyres' motion to dismiss their counterclaim and notifying them that they needed to elect for dismissal to be with prejudice or without prejudice. The order also dissolved the injunction. On June 18, the County filed for emergency relief to keep the injunction intact. The court granted the motion on June 21 and reinstated the injunction. On June 30, the McIntyres filed a notice asking the court to dismiss their inverse condemnation counterclaim without prejudice. The injunction was finally dissolved on July 17. The court ultimately entered a final quiet-title decree in favor of the McIntyres on May 25, 2005. The County appealed, and the Colorado Court of Appeals affirmed. The County filed a petition for certiorari with the Colorado Supreme Court, which was denied on August 13, 2007.

B.  The Federal Proceedings

The McIntyres filed a complaint in federal court on March 7, 2006, which asserted a claim for inverse condemnation under the Colorado Constitution and claims under 42 U.S.C. § 1983 for violations of their substantive and procedural due process rights.  The County filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss all of the McIntyres' claims, arguing that the inverse condemnation claim was barred by the statute of limitations and the due process claims failed to state a claim upon which relief could be granted.  The district court granted the County's motion thereby dismissing all of the McIntyres' claims.  At the same time, the district court denied the McIntyres' motion for partial summary judgment on their inverse condemnation claim.  The McIntyres appeal from the district court's decision to dismiss their inverse condemnation claim, but they do not challenge the dismissal of their due process claims.

II.  Discussion

The district court granted the County's motion to dismiss on the inverse condemnation claim and denied the McIntyres' motion for partial summary judgment on that claim because it concluded that the McIntyres' claim was time-barred.  Because it was considering both a motion to dismiss and a motion for summary judgment, the McIntyres assert that the district court appeared to rely on facts outside of the complaint and that therefore the summary judgment standard of review should apply.  Here, as the McIntyres indicated in their motion

-4-

for partial summary judgment, "[t]he parties agree on what happened.  What the parties' dispute is what these events legally mean."  Aplt. App. at 101; *see also id.* at 102.  As a result, there is no need to review this case using the typical standard for a motion to dismiss or a motion for summary judgment.  "Because the parties do not dispute the facts, we have before us a purely legal question, and thus we review the matter de novo."  *Locke v. Saffle*, 237 F.3d 1269, 1270-71 (10th Cir. 2001).

The McIntyres argue that the district court erred in dismissing their inverse condemnation claim as barred by the statute of limitations.  An inverse condemnation claim is brought by a landowner against a government defendant for "the 'taking' of private property for public or private use, without compensation, by a governmental or public entity which has refused to exercise its eminent domain power."  *Fowler Irrevocable Trust 1992-1 v. City of Boulder*, 17 P.3d 797, 802 (Colo. 2001) (en banc) (quotation omitted).  Due to the McIntyres' status as Arizona residents, this case arises in part under diversity jurisdiction; Colorado law therefore governs the limitations period and the accrual rules for the McIntyres' inverse condemnation claim, *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005).

A.

The McIntyres do not dispute that actions against any public or governmental entity must be brought within two years after the cause of action accrues, *see* Colo. Rev. Stat § 13-80-102(1)(h); *see also Bad Boys of Cripple Creek Mining Co. v. City of Cripple Creek*, 996 P.2d 792, 795 (Colo. Ct. App. 2000) (holding that § 13-80-102(1)(h) applies to inverse condemnation claims). The dispute in this case concerns when the McIntyres' claim accrued. The County asserts that the McIntyres' claim accrued on June 26, 1998, the date the state court first entered its temporary restraining order, which prevented the McIntyres from excluding the public from using the trail. The McIntyres' position is that their claim did not accrue until the state court's final quiet-title decree on May 25, 2005, which established that they actually owned the trail. The McIntyres argue that their claim could not have accrued and the statute of limitations could not have begun running until they knew that they owned the trail. We disagree.

According to Colo. Rev. Stat. § 13-80-108(1), a cause of action for injury to property "accrue[s] on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." We agree with the County that the McIntyres knew the date of their injury and its cause on June 26, 1998, when the state court granted the County's request for an injunction. After that date, the McIntyres were unable to prevent the public from

accessing the trail that crossed their land, and the County did not compensate them for this alleged taking. The McIntyres' pleadings in state court are consistent with the County's accrual position. The McIntyres timely filed an inverse condemnation counterclaim in state court in December 1999, which was within two years of the June 1998 accrual date. That claim stated:

> In the event that this Court does not declare a public highway that includes any portion of the McIntyre parcels *then Gunnison County and U.S. Forest Service have taken the McIntyres' property without just compensation* in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Section 15 of Article II of the Colorado Constitution and, with respect to Gunnison County, C.R.S. §§ 38-1-101, et seq., *and are therefore obligated to provide compensation to the McIntyres for the temporary takings of their property, which began June 28th, 1998.*

Aplt. App. at 85 ¶57 (emphasis added). The McIntyres' state-court counterclaim indicates that they knew as of June 28, 1998, that they had been injured by the County's actions.

On appeal, the McIntyres agree that the accrual language from § 13-80-108(1) applies, *see* Aplt. Br. at 15, but they impose an additional requirement that is not reflected in the statutory language. They rely on *Flatiron Paving Co. v. Great Southwest Fire Insurance Co.*, 812 P.2d 668, 670 (Colo. Ct. App. 1990), for the proposition that "[b]efore a statute of limitations begins to run, a plaintiff must be able to maintain a cause of action," Aplt. Br. at 15. Applying this principle, the McIntyres assert that before their claim could accrue they needed to be able to establish that they had a property interest in the trail,

-7-

which is one of the elements for maintaining an inverse condemnation claim.

They contend that it was not possible to establish their property interest until the

quiet-title suit with the County was resolved. The *Flatiron* case and its progeny,

*Daugherty v. Allstate Insurance Co.*, 55 P.3d 224 (Colo. Ct. App. 2002), however,

do not accurately reflect the current state of Colorado law regarding claim

accrual. As the Colorado Supreme Court recently explained:

> Although the *Daugherty* court analyzed the accrual issue using
> section 13-80-108(1), it also incorrectly cites case law regarding the
> determination of accrual that predates the General Assembly's
> adoption of section 13-80-108. Specifically, Petitioner relies on the
> statement in *Daugherty* that "[t]he procedure to be utilized in
> determining when a cause of action accrues is to ascertain when
> litigation could first have been successfully maintained." *Id.* at 226
> (citing *Flatiron Paving Co. v. Great Sw. Fire Ins. Co.*, 812 P.2d 668,
> 670 (Colo. App. 1990)). In turn, *Flatiron* relied on a court of
> appeals' decision from 1975, *Tucker v. Claimants in Death of
> Gonzales*, 37 Colo. App. 252, 546 P.2d 1271 (1975). However,
> *Flatiron* and *Daugherty* should not have quoted *Tucker*, as its rule for
> determining the date of accrual was replaced by the General
> Assembly's adoption of a specific statute governing determination of
> accrual, section 13-80-108, in 1986. The current version of section
> 13-80-108 governs our determination of accrual here.

*Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 2007 WL 2917129, at *18

n.10 (Colo. Oct. 9, 2007) (en banc).

As *Brodeur* illustrates, the only relevant inquiry for claim accrual is

contained in § 13-80-108(1), which states that a cause of action for injury to

property "accrue[s] on the date both the injury and its cause are known or should

have been known by the exercise of reasonable diligence." Accordingly, the

ownership dispute with the County did not impact the accrual of the McIntyres'
claim because the McIntyres did not need to establish all of the elements of their
inverse condemnation claim before their claim accrued.  The McIntyres believed
that they had a property interest in the trail as evidenced by their answer and
counterclaim in the state-court quiet-title action.  Their pleading in state court
also demonstrates that they thought they could properly file an inverse
condemnation claim, even though the ownership of the property was disputed.
Once the County's request for a temporary restraining order was granted on
June 26, 1998, and the McIntyres could no longer prevent public access to the
trail, they knew they were injured, and they knew the cause of that injury.

The McIntyres contend that *Doyle v. Linn,* 547 P.2d 257, 259 (Colo. Ct.
App. 1975), supports their position, arguing that *Doyle* establishes that title
ownership must first be determined before a dependent cause of action accrues.
The McIntyres misinterpret *Doyle*, which actually supports the County's position.
In *Doyle*, the plaintiffs built their house on government property because of an
apparently incorrect survey performed by a private individual.  In 1965, the
government performed its own survey purportedly showing that the plaintiffs'
house was on government land.  The government then sued the plaintiffs for
trespass, and the judgment in its favor was affirmed on appeal in 1972.  The
plaintiffs then moved their house onto their own land.  In 1973, the plaintiffs filed

a negligence action against the private individual who had performed the incorrect survey.

The state court dismissed the plaintiffs' negligence action, concluding that the six-year statute of limitations began to run in 1965, "the date of the notice to the Doyles of the government's claim." *Id.* at 259. The court of appeals reversed, noting "[a]lthough knowledge of the government's hostile claim started the running of the statute of limitations against any claim for relief which the Doyles might have had against the government, we are here concerned only with the question of when the claim for relief against [the private surveyor], on negligence, arose." *Id.* (citation omitted). Because the suit was a negligence action against the private surveyor and the damages resulted from plaintiffs having to move their house after they were found to be trespassers, the court concluded the negligence claim could not accrue until the trespass claim by the government was determined to be valid. *Id.* Here, the McIntyres are suing the County, the governmental entity that made a hostile claim to their land, and there is no third-party negligence claim that was dependent on a determination of the property rights as between the McIntyres and the County. Accordingly, consistent with *Doyle*, the statute of limitations began to run on the McIntyres' claim against the County when they became aware of the County's quiet-title action in June 1998.

In a related argument, the McIntyres assert that their claim could not have accrued in June of 1998 because takings do not accrue at the start of a physical invasion where the public use starts under a claim of right, relying on *Hayden v. Board of County Commissioners*, 580 P.2d 830, 834 (Colo. Ct. App. 1978). In *Hayden*, the plaintiffs initially granted the defendant a temporary easement over their property starting in January 1968 in order to detour a portion of a road during a construction project. The easement was set to expire after the completion of the road construction or January 17, 1969, whichever first occurred. Ultimately, the defendant decided to permanently route the road over the plaintiffs' property. The plaintiffs filed an inverse condemnation action in April 1974, which the defendant argued was time-barred. The defendant argued that the plaintiffs' claim accrued in February 1968 when the defendant entered the plaintiffs' property to begin construction of the temporary road. The court of appeals disagreed, concluding that when "[defendant] entered upon plaintiffs' property in February 1968, they did so under a claim of right, *i.e.*, the temporary easement . . . . Consequently, the earliest date upon which this action could have been maintained was January 17, 1969, when the easement expired, and the intent to appropriate this property became clear." *Id.*

The McIntyres argue that the *Hayden* case supports their position that their takings claim did not accrue in June 1998 when the public gained access to the trail "[b]ecause the state court initially determined the County had a right to

-11-

control the Trail, the public use started under a claim of right." Aplt. Br. at 20.

*Hayden* does not support their position. In *Hayden*, unlike this case, the plaintiffs initially gave permission to the defendant to come onto their property by granting it a temporary easement. At no time did the McIntyres give permission to the County to use the trail. In *Hayden*, after the temporary easement expired and the defendant did not leave the property, the claim became hostile, and the statute of limitations began running. The temporary restraining order entered by the state court in this case did not give the County a claim of right to use the property because the merits of the quiet-title action continued to be contested while the injunctive relief was temporarily in place. The County's use of the property was hostile and disputed starting in June 1998 when it filed its quiet-title action. *Hayden* is consistent with *Doyle* in holding that a takings claim accrues when a plaintiff knows of the hostile claim by the governmental entity.

Finally, the McIntyres attempt to analogize their inverse condemnation claim to a temporary and/or regulatory taking, and they argue that with these types of takings there must be a final determination of the affected property

-12-

interests before the claim can accrue.[1]  The district court's order thoroughly

addressed this argument and determined that:

> It is clear that plaintiffs here allege a physical, as opposed to a
> regulatory taking, albeit one of limited duration.  They, therefore,
> cannot, simply by characterizing their inverse condemnation claim as
> involving a "temporary taking," reap the benefit of jurisprudence
> regarding temporary regulatory takings.  More importantly, none of
> the authority on which plaintiffs rely stands for the proposition for
> which plaintiffs seek to invoke it.  Although the
> permanent/temporary distinction is important for purposes of what
> compensation is due, whether a physical taking is permanent or
> temporary is irrelevant to the application of the statute of limitations
> because the accrual date is the same for both.  Under either rubric,
> the limitations period begins to run at the time of the taking.

Aplt. App. at 232-233 (internal quotations, footnotes, brackets, and citations

omitted).  The district court correctly concluded that the McIntyres' claim

accrued on June 26, 1998, and that therefore their inverse condemnation claim

filed on March 7, 2006 was time-barred.

---

[1]     The McIntyres also argue that takings claims do not accrue at the start of
public use where a sequence of events effects the takings.  They assert that there
were five times over the course of the state proceedings when injunctive relief
was granted and that these distinct events each constituted a new and separate
taking, which triggered a new limitations period.  *See* Aplt. Br. at 27-28.  The
McIntyres did not raise this issue in the district court.  In count one of their
complaint, they alleged that there was one uninterrupted "physical invasion . . .
from June 26, 1998 through July 19, 2004 [that] effected a physical taking . . . ."
Aplt. App. at 22.  Moreover, the McIntyres did not raise this argument in their
response to the County's motion to dismiss or in their motion for partial summary
judgment.  We see no reason to depart from our general rule that we will not
consider an issue that was not raised in the district court.  *See Walker v. Mather*
(*In re Walker*), 959 F.2d 894, 896 (10th Cir. 1992).

B.

The McIntyres argue that the federal district court's decision to dismiss their inverse condemnation claim as time barred conflicts with a ruling by the state district court in the quiet-title proceedings. They contend that the state court ruled that their inverse condemnation claim was not ripe for adjudication on May 3, 2004, and that the federal district court needed to accord this ruling "'full faith and credit,'" Aplt. Br. at 28-29.[2] We find this argument to be without merit because the McIntyres have misrepresented the nature of the state court proceedings– there was no ruling by the state court on the ripeness of the McIntyre's inverse condemnation counterclaim.

On May 3, 2004, the parties participated in a status conference. During the conference, the court asked the parties to indicate how many days they thought the trial would last on the County's quiet-title claim. Aplt. App. at 150:12-23. The court also asked the parties to indicate how much time during the trial would need to be dedicated to the McIntyres' counterclaims. *Id.* at 151:20-23. At that point, the County suggested that the McIntyres' counterclaims would not need to be litigated if the County were to prevail on its quiet-title claim and that perhaps the counterclaims should be bifurcated. *Id.* at 152:7-11. The court asked

---

[2] The McIntyres also contend that the interests of justice should outweigh the application of the statute of limitations to their inverse condemnation claim or, alternatively, that they had no adequate state procedures. These are additional arguments that were not raised in the district court and are therefore waived. *See Walker*, 959 F.2d at 896.

-14-

Ms. McIntyre, who is an attorney and was representing the plaintiffs pro se, what her thoughts were about bifurcating the trial and resolving the quiet-title claim first, and she stated that she agreed with the proposal to bifurcate. *Id*. at 153:1-3. There was no discussion at any time during the hearing regarding the ripeness of the McIntyres' inverse condemnation counterclaim, nor was there any oral ruling on that issue. The court's decision to bifurcate the claims based on the agreement of the parties is not the same as ruling that the McIntyres' claims were not ripe. At the conclusion of the hearing, the court set a trial date on the quiet-title claim and then indicated that, if it ruled on summary judgment prior to that time, then those days could be used for the McIntyres' counterclaims. *Id*. at 153:18-22. The court did not at any point indicate that the counterclaims were not ripe, but instead expressed an intention to try the counterclaims at a later date.

On May 5, 2004, the court issued a minute order, which reflected what had occurred at the status conference. There is no ruling in the minute order regarding the ripeness of the McIntyres' inverse condemnation counterclaim. *See id*. at 160-61. On May 8, 2004, as discussed above, the McIntyres filed a motion to withdraw their inverse condemnation claim, stating that they wanted to refile the claim as a separate action at a later date. *Id*. at 214. The state court granted the motion to dismiss, but ordered the McIntyres to notify the court if the dismissal was to be with or without prejudice. *Id*. at 164-65. On June 30, the McIntyres filed a notice asking the court to dismiss their inverse condemnation

claim without prejudice. *Id*. at 64. The McIntyres argue that "[h]ad the state court believed the takings claim accrued in 1998, and so a future filing would be time-barred, it would have dismissed [the claim] with prejudice or denied the request." Aplt. Br. at 31. The McIntyres did not ask the state court for any substantive ruling on when their inverse condemnation claim accrued and whether they would be time-barred from filing that claim in the future; they simply filed a motion to withdraw the claim. There is no substantive ruling that can be inferred from the state court's granting of the McIntyres' motion to voluntarily dismiss their claim. The McIntyres' decision to dismiss their claim was a decision they made on their own. Although the decision to voluntarily dismiss now appears to have been a significant strategic error because their state-court inverse-condemnation claim was timely filed, the McIntyres' cannot hold the state court responsible for their mistake.

The judgment of the district court is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

-16-